# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Lisa A. Biron, | Case No. 20-cv-2110 (WMW/ECW) |
| Plaintiff, | |
| v. | **ORDER &** |
| | **REPORT AND RECOMMENDATION** |
| Michael Carvajal, *Director Federal Bureau of Prisons, sued in their official capacity*, FCI Waseca Warden Mistelle Starr, *sued in their official capacity*, and Deanna Hiller, *FCI Waseca Unit Manager; sued in her individual and official capacities*, | |
| Defendants. | |

This matter is before the Court on the United States' Motion to Screen and Stay Proceedings (Dkt. 7) ("Motion to Screen and Stay"), Plaintiff's Request for Expedited Preliminary Injunctive Relief (Dkt. 22) ("Motion for Preliminary Injunction"), Plaintiff's Motion for Leave to Supplement Motion for Preliminary Injunction (Dkt. 31), Plaintiff's Motion for Leave to File Sur-Reply (Dkt. 41), and Defendants' Motion to Dismiss or for Summary Judgment (Dkt. 52) ("Motion to Dismiss"). The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated below, the Court (1) recommends granting the Motion to Dismiss (Dkt. 52) and denying the Motion for Preliminary Injunction (Dkt. 22); (2) denies the Motion to Screen and Stay (Dkt. 7); (3) grants Plaintiff's Motion for Leave to Supplement Motion for Preliminary Injunction (Dkt. 31); and (4) grants Plaintiff's Motion for Leave to File Sur-Reply (Dkt. 41).

I.    **FACTUAL AND PROCEDURAL BACKGROUND**[1]

A.    **The Parties**

Plaintiff Lisa Biron ("Plaintiff" or "Biron") was sentenced in 2013 to serve a 480-month term of imprisonment to be followed by a lifetime term of supervised release and is now incarcerated at the Federal Correctional Institution in Waseca, Minnesota ("FCI-Waseca"). *Biron v. Sawyer*, No. 19-CV-2938 (SRN/LIB), Dkt. 67 at 3 (D. Minn. Aug. 21, 2020), *R.&R. adopted*, Dkt. 75 (D. Minn. Sept. 30, 2020).[2]  (Dkt. 5 ¶¶ 2, 8.)  Biron was formerly licensed to practice law in New Hampshire and Massachusetts.  *Biron v. Sawyer*, No. 19-CV-2938 (SRN/LIB), Dkt. 75 at 10.

Defendants are officials and employees of the Federal Bureau of Prisons ("BOP"); Michael Carvajal is the Director of the BOP; Mistelle Starr is the Warden of FCI-Waseca; and Deanna Hiller is the Unit Manager of Biron's unit at FCI-Waseca.  (Dkt. 5 ¶¶ 3-5; Dkt. 55 at 2.)[3]  Carvajal and Starr are sued in their official capacities, and Hiller is sued in her individual and official capacities.  (Dkt. 5 ¶¶ 6-7.)

---

[1]    The Court does not rely on all of these facts in recommending dismissal under Rule 12(b)(6), but it recites them in view of Biron's Motion for Preliminary Injunction and Defendants' Motion to Screen and Stay, because Defendants moved for summary judgment as an alternative to moving under Rule 12(b)(6), and simply to provide context.

[2]    Order and Report and Recommendation available at 2020 WL 6121270; Order Adopting Order and Report and Recommendation available at 2020 WL 5812970.

[3]    Unless otherwise noted, all page numbers refer to the CM/ECF pagination.

**B.    Biron's Complaint and Amended Complaint**

This case came to Federal court when Defendants removed Biron's state-court complaint, which Defendants stated had been served but not filed, on October 5, 2020.[4] (Dkt. 1 ¶¶ 1-2.)  Briefly, Biron alleged in the Complaint that restrictions on access to a law library and typewriter imposed by Defendants due to the COVID-19 pandemic and denial of a specific request for access to a law library and typewriter in May 2020 resulted in denial of a motion for leave to amend filed in *Biron v. Sawyer*, No. 19-CV-2938 (SRN/LIB) (hereinafter "*Biron v. Sawyer*").  (Dkt. 1-2 ¶¶ 12-24.)

After this case was removed to this Court on October 5, 2020 (Dkt. 1), Biron filed[5] the Amended Complaint on October 14, 2020 (Dkt. 5).  In the Amended Complaint, Biron first claims that each Defendant's failure to "allow" or "ensure Plaintiff meaningful, adequate, or reasonable access to the law library and typewriter interferes with Plaintiff's access to the court and prejudices Plaintiff's litigation in violation of the First Amendment to the U.S. Constitution."  (Dkt. 5 ¶¶ 40-42.)  Second, Biron claims that Carvajal's and Starr's failure to timely update the Electronic Law Library and to provide state law resources "interferes with Plaintiff's access to the court and prejudices her litigation in violation of the First Amendment."  (*Id.* ¶¶ 43-44.)  Third, Biron claims that Carvajal's and Starr's failure to deliver her mail "because of the appearance of the exterior . . . and which contained legal information, interfered with Plaintiff's access to

---

[4]    Defendants filed the Complaint in Waseca County District Court for purposes of accomplishing removal.  (Dkt. 1 ¶ 1.)

[5]    For convenience, in this Section and Section I.F, the Court refers to the dates Biron's filings were docketed, though each was mailed some days before docketing.

the court and prejudices her litigation in violation of the First Amendment and due process clause of the U.S. Constitution." (*Id.* ¶ 45.)  Fourth, Biron claims that the BOP's "Central Office's response condoning Defendants'" (1) "failure to provide reasonable access to an adequate law library and typewriter," (2) "failure to open and inspect all general correspondence," and (3) "return of unopened mail to the post office because of the exterior appearance of the envelope" constitutes final agency action, pursuant to 5 U.S.C. § 704, and violates the BOP's "established regulations." (*Id.* ¶¶ 46-50; *see also* ¶¶ 33-37 (citing C.F.R. sections).)  Biron seeks declaratory and injunctive relief and damages.  (*Id.* ¶¶ 51-62.)

## C.    **Biron's Lawsuits**

Biron is or has been involved in several court cases, some of which will be described in more detail in Section I.D.  These cases include: "several active pro se appellate cases concerning her criminal conviction pending at the First Circuit Court of Appeals"; "a civil action pending against various FCI Waseca officials, including Defendant Hiller, in this Court (no. 19-cv-2938)"; and "family law litigation, and attorney discipline matters in New Hampshire and Massachusetts state courts." (Dkt. 5 ¶¶ 9-12.)  In addition to *Biron v. Sawyer* and the present case, Biron has brought claims against federal employees or officials in two additional cases that were litigated in this District: *Biron v. Hurwitz*, No. 19-cv-57 (SRN/LIB) (D. Minn. filed Jan. 9, 2019), and *Biron v. Barnes*, No. 19-cv-898 (SRN/LIB) (D. Minn. filed Apr. 1, 2019).

In *Biron v. Hurwitz*, *Biron v. Sawyer*, and the present case, Biron captioned the complaints as state court suits in Waseca County, Minnesota.  No. 19-cv-57 (SRN/LIB),

Dkt. 1-2 (D. Minn. Jan. 9, 2019); No. 19-cv-2938 (SRN/LIB), Dkt. 1-2 (D. Minn. Nov. 20, 2019).  (Dkt. 1-2, Ex. B (original Complaint); *see also* Dkt. 21 ¶¶ 10, 15, 19; Dkt. 20, Ex. A (copy of first page of complaint in *Biron v. Hurwitz*).)  According to Defendants, Biron served but did not file her state-court complaints, which allowed her to avoid paying a civil filing fee.[6]  (Dkt. 8 at 2, 6 (citations omitted); Dkt. 55 at 4 (citations omitted).)  Defendants assert that avoiding paying a filing fee was the purpose of serving unfiled complaints.  (Dkt. 8 at 2, 6.)  In support of this assertion, Defendants cite an email[7] Biron sent to FCI-Waseca officials on April 10, 2020, responding to their denial of her request for email access to communicate with family and stating, "I guess I will just keep filing law suits [sic] until the BOP gets sick of them.  I have figured out a way to bypass the [Prison Litigation Reform Act of 1995 ("PLRA")] restrictions and the filing fees.  I am considering showing other inmates how to do this, too."  (Dkt. 10-1, Ex. A.)  Biron, however, states that she mailed each complaint for filing in Waseca County court, but each was returned to her by the Waseca County Court Administrator due to lack of jurisdiction or proper venue.  (Dkt. 21 ¶¶ 10, 15-16, 19-20 (citing Dkt. 20-1, Ex. B (Waseca County Court Administrator letter for *Biron v. Hurwitz*); Dkt. 20-2, Ex. C (Waseca County Court Administrator letter for *Biron v. Sawyer*); and Dkt. 20-3, Ex. D

---

[6]    In Minnesota state court, a civil action is commenced when the summons and complaint are served on the defendant.  *See* Minn. R. Civ. P. 3.01.  In Federal court, a civil action is commenced by filing a complaint with the court.  Fed. R. Civ. P. 3.

[7]    The parties appear to use the term "email" at times to refer to the electronic messages inmates at FCI-Waseca are able to send to and receive from FCI-Waseca staff and the public.  (*See, e.g.*, Dkt. 5 ¶ 25; Dkt. 56 ¶ 12.)  The Court also uses these terms interchangeably in the context of this Order and Report and Recommendation.

(Waseca County Court Administrator letter for the present case)).)  Biron states that in each case, she attempted to file the complaint in state court "because [she is] indigent and under Minnesota law could seek [in forma pauperis ("IFP")] status and qualify for a waiver of the filing fee," and that she "was fully prepared to litigate" in state court, but the defendants removed each case to federal court.  (*Id.* ¶¶ 12-13, 17-18, 21-22.) Defendants removed each of these three cases to Federal court in this District.  *Biron v. Hurwitz*, No. 19-cv-57 (SRN/LIB), Dkt. 1 (D. Minn. Jan. 9, 2019); *Biron v. Sawyer*, Dkt. 1 (D. Minn. Nov. 20, 2019).  (Dkt. 1 (Oct. 5, 2020).)[8]

As will be described further, many of Biron's allegations and claims in this case relate to the proceedings in *Biron v. Sawyer*.  As background, Biron claimed in *Biron v. Sawyer* that the BOP and FCI-Waseca were prohibiting her from having contact with her daughter in violation of the Constitution and sought injunctive relief requiring them "to stop interfering" with Biron and her daughter's right to communicate with each other. *Biron v. Sawyer*, Dkt. 1-2 (Nov. 20, 2019).  The following events relevant to this action occurred in *Biron v. Sawyer* after it was removed to Federal court on November 20, 2019:

Biron filed motions to join her daughter as a plaintiff, Dkt. 8 (D. Minn. Nov. 25, 2019), Dkt. 9 (D. Minn. Dec. 2, 2019); a Motion for Emergency Injunction / Temporary

---

[8]    The parties make similar assertions regarding a case in Texas: Defendants state that Biron "initiated a civil lawsuit through a state court complaint for which it appears she was not required to pay a filing fee, which was removed to federal court" (Dkt. 8 at 3 n.1 (citations omitted)), and Biron states that she filed the case in Texas state court because she is indigent and qualifies for a waiver of the filing fee under Texas law; that she was "fully prepared" to litigate in state court, but the defendants removed the case; and that the case "is currently pending at the Fifth Circuit Court of Appeals (no. 19-10682) and remand is expected" (Dkt. 21 ¶¶ 5-8).

Restraining Order, Dkt. 10 (Dec. 4, 2019); and a Verified Motion for Summary Judgment and for Preliminary Injunction, Dkt. 27 (Jan. 1, 2020). The defendants (which included Hiller and the then-current Director of the BOP and the Warden of FCI-Waseca) were given an extension of time to file a consolidated response to Biron's motions for joinder and Motion for Emergency Injunction / Temporary Restraining Order. Dkt. 14 (Dec. 6, 2019). Biron responded to the defendants' request for extension of time (though her response was not received and docketed by the court until after the extension had already been granted), clarifying that her motion was for emergency relief, not a preliminary injunction, and stating that once she and her daughter received the emergency relief of being able to communicate with each other, "they intend to move for a preliminary injunction . . . , as well as file an amended complaint adding claims for damages." Dkt. 15 (Dec. 16, 2019).[9] In addition to Biron's motions, the defendants filed a motion to dismiss. Dkt. 29 (Feb. 4, 2020). However, based on letters from the parties, on March 6, 2020, U.S. Magistrate Judge Leo I. Brisbois permitted withdrawal of Biron's Verified Motion for Summary Judgment and for Preliminary Injunction and the defendants' motion to dismiss. Dkt. 45 at 3 (Mar. 6, 2020). Judge Brisbois further ordered that an existing briefing schedule regarding Biron's motions for joinder and Motion for Emergency Injunction / Temporary Restraining Order remained in effect and that defendants answer or otherwise respond to the complaint by April 10, 2020. *Id.* at 3-4.

---

[9]     Both the defendants and the court's order had referred to Biron's Motion for Emergency Injunction / Temporary Restraining Order, Dkt. 10, as a motion for preliminary injunction. Dkt. 11 (Dec. 5, 2019), Dkt. 14 (Dec. 6, 2019). As noted above, Biron filed a separate Verified Motion for Summary Judgment and for Preliminary Injunction. Dkt. 27 (Jan. 1, 2020).

The defendants subsequently filed a new motion to dismiss.  Dkt. 47 (Apr. 10, 2020).

This background sets the stage for the events in *Biron v. Sawyer* described in the

following Sections, beginning in April 2020, when the COVID-19 pandemic began to

affect inmates at FCI-Waseca.

**D.    Factual Background Regarding Access to Law Library and a Typewriter**

**1.    Biron's Law Library and Typewriter Access Before the COVID-19 Pandemic and in April 2020**

Inmates at FCI-Waseca access a law library via an electronic database called the

Electronic Law Library ("ELL").  (Dkt. 5 ¶ 14; Dkt. 56 ¶¶ 6-7.)  The BOP provides the

computer terminals—which are called TRULINCS computers or terminals—for

accessing the ELL, and a third-party vendor provides the content for the ELL.  (Dkt. 5

¶ 14; Dkt. 56 ¶ 6; *see also* Dkt. 56-3, Ex C (list of BOP ELL content).)  According to the

declaration of Regina Kallis, Associate Warden at FCI-Waseca, this vendor updates the

ELL content, and updates are made monthly, quarterly, or less frequently, depending on

the content type.  (Dkt. 56 ¶ 8 (citing 56-4, Ex. D (ELL update schedules)).)  Biron

asserts that content is updated only four times per year, which she asserts "is inadequate

under the Constitution and federal regulations" because it "prejudic[es] Plaintiff's ability

to litigate her active civil cases and criminal cases."  (Dkt. 5 ¶ 30; *see also* Dkt. 25 ¶ 6

(Nov. 16, 2020 Biron Decl. stating that the ELL has not been updated since September);

Dkt. 24 at 2 (Biron's Mem. Supp. Mot. Prelim. Inj. Relief stating that "caselaw has not

been updated since on or about September 20th").)  The ELL includes federal case law,

statutes, rules, regulations, program statements, and certain reference materials, as well as

similar categories of content for the District of Columbia and military law, but does not

include state law material.  (Dkt. 5 ¶ 29; Dkt. 56 ¶¶ 5-7; Dkt. 56-3, Ex C (list of BOP

ELL content).)  Biron alleges that the content "is inadequate under the Constitution and

federal regulations" for the following reasons:

> [I]t fails to provide access to any state law (caselaw or statutory law) which
> has prejudiced Plaintiff in matters of state family law; state attorney
> discipline law, and state tort law which informs all claims and statutes of
> limitations under the Federal Tort Claims Act.  In addition, many federal
> convictions and sentences are based on prior state convictions, and without
> access to the relevant state's law, post conviction petitions cannot be filed.

(Dkt. 5 ¶ 29.)

At FCI-Waseca, TRULINCS computers allowing access to the ELL are located in

the Recreation Building, where typewriters are also available for inmate use.  (*Id.* ¶ 14;

Dkt. 56 ¶ 9.)  There also are TRULINCS computers in the housing units, but except as

described in Sections I.D.4-5, those computers allow inmates access to electronic

messaging with staff and the public, an electronic bulletin board, and other features, but

not the ELL, because, according to Kallis, "inmates had access to the ELL in the

Recreation Building."  (Dkt. 5 ¶ 14; Dkt. 56 ¶ 10.)  According to a TRULINCS Inmate

Usage Report covering 2020, Biron was a regular user of the ELL before the COVID-19

pandemic; for example, in March 2020, she used the ELL on 8 different days for between

44 minutes and 135 total minutes per day.  (Dkt. 56-8, Ex. H at 147-64 (Mar. 2020 data);

*see also id.* at 165-92 (Jan.-Feb. 2020 data).)[10]

Biron states, "Since the COVID-19 pandemic, the FBOP and specifically FCI

Waseca have imposed severe restrictions on inmate movement and access to legal library

---

[10]     There is no similar data in the record about typewriter use, only a party's and/or
declarant's statements about when Biron used a typewriter.

and typewriter." (Dkt. ¶ 13; *see also* Dkt. 70 ¶¶ 11, 19 (Apr. 29, 2021 Biron Decl. stating that she has had access to the Recreation Building 0 or 1 hour per day since April 1, 2020, and that she is presently required to remain in her housing unit 23 or 24 hours per day).) Kallis similarly states, "Beginning on April 1, 2020, inmate movement throughout the institution was limited to essential services and work details. Inmates otherwise had to remain in their housing units. . . . Due to these modified operations, inmates were no longer able to access the ELL in the Recreation Building . . . ." (Dkt. 56 ¶¶ 11-12 (citing Dkt. 56-5, Ex. E (Mar. 31, 2020 BOP COVID-19 Action Plan Memorandum)).) Kallis states that "institutions were instructed to provide inmates access to the ELL when they demonstrated an imminent court deadline, which is generally defined within the BOP as a court-imposed deadline within 30 days." (*Id.* ¶ 11.) Although Biron's Amended Complaint does not describe this policy and there is no information in the record about when she first became aware of it, she was aware of the policy at least as of May 18, 2020, as shown in an email she filed as an exhibit in *Biron v. Sawyer* that referenced the requirement for an imminent deadline. *See* Dkt. 64 (D. Minn. June 1, 2020).

Kallis further states that "FCI Waseca considered alternative means of [ELL] access for the inmates," including "activating the ELL function of the TRULINCs computers in the housing units." (Dkt. 56 ¶ 12.) FCI-Waseca officials "decided against activating the ELL in the housing units at that time" due to "concerns [that] inmates using the ELL function in the housing units would monopolize the terminals, preventing other inmates from" using the terminals for other purposes, such as electronic messaging, at a time when inmate visitation had been suspended and officials "determined it was

important to maintain inmates' ability to communicate with the public" by phone and email. (*Id.*) "Instead, FCI Waseca determined providing inmates with access to an ELL terminal outside of the housing units and under staff supervision was a better option. Staff supervision was required because of the modified operations. (*Id.* ¶ 13.) Because the Recreation Building was out of the way, and so more time-consuming for staff to supervise, and "a larger area to disinfect between inmate users," FCI-Waseca officials "rejected the idea of bringing inmates to the Recreation Building." (*Id.*)

FCI-Waseca allowed inmates to use a terminal with ELL access and a typewriter "in a smaller room centrally located to the housing units" as of April 20, 2020. (*Id.* ¶ 14.) Biron similarly states that ELL and typewriter access were available "from approximately mid-April through the beginning of May 2020" "in center hall." (Dkt. 60 at 3 n.4.) Biron attributes this arrangement to "an experienced Interim Warden" at FCI-Waseca at that time, "who, in direct response to Plaintiff's need and request" made the ELL and typewriter available in that location. (*Id.*) According to Kallis, to gain access to the ELL and typewriter, inmates had to "demonstrate[] an imminent court deadline, defined as a court-ordered response within 30 days . . . in order to limit the number of inmates leaving a housing unit, which would in turn, reduce the risk of spreading COVID-19 throughout" FCI-Waseca. (Dkt. 56 ¶ 14.) Staff would screen an inmate for COVID-19 symptoms before removing her from her housing unit, escort the inmate to the ELL and typewriter, supervise the inmate's use, and then screen her again before the inmate returned to her housing unit. (*Id.* ¶ 15.) "The ELL terminal, typewriter, and anything else the inmate

may have come into contact with in the room were disinfected after each inmate's use." (*Id.*)

Kallis states that "[t]hroughout the COVID-19 pandemic, Biron has received access to the ELL consistent with these procedures." (*Id.* ¶ 22 (citing Dkt. 56-8, Ex. H (2020 TRULINCS Inmate Usage Report).) In April 2020, Biron's ELL use consisted of 65 minutes on April 21 (Dkt. 56-8, Ex. H at 136), which would have been after ELL access was provided "in a smaller room centrally located to the housing units," as described by Kallis (Dkt. 56 ¶ 14) and apparently during the time access was provided "in center hall," as described by Biron (Dkt. 60 at 3 n.4). Biron also used a typewriter on or about April 24, 2020, as on that date she signed and mailed a typed opposition to Defendants' Motion to Dismiss in *Biron v. Sawyer*. Dkt. 55 at 5 (D. Minn. Apr. 29, 2020).[11] The court in that case had ordered that Biron "file and serve her response to Defendants' Motion to Dismiss, [Docket No. 47], as soon as practicable and in any event by no later than Tuesday, May 5, 2020." Dkt. 54 at 4 (D. Minn. Apr. 14, 2020).

### 2. Biron's Law Library and Typewriter Access from May Through July 2020

Biron alleges that she "sought permission from Defendant Hiller in May 2020 for time at the law library and with a typewriter to draft an essential filing in case no. 19-cv-2938 (an amended complaint)," but "Defendant Hiller, who is also a defendant in case no. 19-cv-2938, denied said access." (Dkt. 5 ¶ 15.) In *Biron v. Sawyer*, she filed an

---

[11] In this response, Biron stated that she "intends to amend her Complaint to include claims for damages, but awaits a decision on her and her daughter's motions for joinder in order to know how to proceed with the amendment." Dkt. 55 at 1 (D. Minn. Apr. 29, 2020).

exhibit of an email she sent on May 15, 2020, in which she requested law library access to work on that case, and it appears that email relates to the incident described in the Amended Complaint in this action. Dkt. 64 (D. Minn. June 1, 2020) ("My last request for access to the law library for preparation for possible litigation was denied by you. I request a 2-hour block of time in the law library concerning case no. 19-cv-2938. I'll not explain to you the particular purpose as you are a defendant in that case."). The exhibit includes a response dated May 18, 2020, which states, "Case 19-cv-2938 is under advisement, and there is no imminent deadline at this point. Therefore, under the modified COVID-19 conditions limiting inmate movement, you will not be able to use the [ELL]. Should you receive information from the Court indicating a filing deadline, you may again request access." *Id.*[12] The next day, May 19, 2020, Biron completed an Informal Resolution Attempt form regarding her May 15 request for law library access, which stated:

> On 5/15/20, I was severely prejudiced by AW Vaught's, AW Kallis', and Unit Manager Hiller's refusal to allow me access to the law library to prosecute case no. 19-cv-2938 . . . . Specifically, on 5/15/20, I received the Defendants' Reply to my opposition to their motion to dismiss. Defendants' Reply . . . necessitated a "Sur-reply" from me. Defendants' failure to allow my access to the law library required me to hand-write my motions without the ability to read the case law cited by the defendants to provide any supportive authorities for my motion. Defendants claim that the [BOP] authorized this denial to prosecute my case against them.*
>
> *Defendants claim I may only use the law library if they agree that I have an imminent court deadline. This is false. On April 28, 2020, I was permitted to use the law library to draft a letter of Supplemental Authority to the First

---

[12]    It is not clear from the face of the document which FCI-Waseca official received and responded to Biron's email. The email's opening is to "Ms. Hiller," but the "To" field shows "Mr. Vaught," and then the "From" field in the response shows "Associate Warden."

Circuit.  (Case 18-1705)  There is never a "deadline" for something of that nature.  Defendants chose to bar my use of the law library to effectively prosecute my case against them.

Dkt. 65 (D. Minn. June 25, 2020).

Two other things occurred on May 18, 2020, the day Biron received the email denying her request to use the law library (and before she filled out the Informal Resolution Attempt form on May 19).  First, Biron signed a handwritten Motion for Leave to File Sur-Reply/Sur-Reply and Motion for Leave to File Amended Complaint in *Biron v. Sawyer*.  Dkts. 58-59 (D. Minn. May 20, 2020).  In the Motion for Leave to File Amended Complaint ("motion to amend"), Biron moved "for leave to amend her Complaint to include claims for damages against Defendants Hiller and Barnes in their individual capacities" and requested "that the Court grant leave to amend, and allow her fourteen (14) days after service of this Court's decision on her and her daughter's motions for joinder to file said amended complaint."  Dkt. 59 (D. Minn. May 20, 2020).  Second, the BOP issued another COVID-19 action plan memorandum that stated, "Whenever possible, consistent with social distancing protocols and safe institution operations, inmates should be permitted access to the [ELL] at the discretion of the Warden at each facility.  We recommend that a schedule be established to permit fair and timely access to ELL terminals upon inmate request . . . ."  (Dkt. 56-6, Ex. F at 2.)

Kallis states that "[a]t the time [the May 18, 2020] guidance was issued, FCI Waseca had begun permitting inmates out of their housing units for more activities, including outdoor recreation in the area next to the Recreation Building."  (Dkt. 56 ¶ 17.)  On May 25, 2020, FCI-Waseca "opened the ELL in the Recreation Building back up for

14

inmate use," though the use was limited to one hour.  (*Id.*; Dkt. 56-7, Ex. G (May 21,
2020 FCI-Waseca Inmate Bulletin regarding ELL use starting May 25).)  *See also Biron
v. Sawyer*, Dkt. 65-1 at 2 n.1 (D. Minn. June 25, 2020) (Biron filing stating that FCI-
Waseca recently "began to allow inmates to sign up for one (1) hour per <u>week</u> in the law
library").  Kallis states, "Inmates were permitted to go to either the outdoor recreation
yard or the ELL in small groups, by housing unit" and "did not need to demonstrate an
imminent court deadline."  (Dkt. 56 ¶ 17.)  "Recreation staff were available to also
supervise the inmates using the ELL, which minimized [officials'] prior concerns about
staff resources."  (*Id.*)

Soon after the reopening of the law library in the Recreation Building, Biron used
the ELL for 49 minutes, on May 28, 2020.  (Dkt. 56-8, Ex. H at 108.)  Also on that day,
the defendants in *Biron v. Sawyer* filed their response to Biron's motion to amend,
arguing that leave to amend should be denied because Biron's motion "does not include
'a copy of the proposed amended pleading' and 'a version of the proposed amended
pleading that shows . . . how the proposed amended pleading differs from the operative
pleading,'" as required by Local Rule 15.1(b).  Dkt. 61 (D. Minn. May 28, 2020).  (*See*
Dkt. 5 ¶ 18 ("The Defendants in case no. 19-cv-2938 based their objection on the
Plaintiff's failure to follow court rules which they prevented her from accessing.").)
Biron, having been informed by phone of the defendants' argument, signed a handwritten
Reply to Defendants' Response to Motion to Amend Complaint that same day.  *Biron v.
Sawyer*, Dkt. 63 (D. Minn. June 1, 2020).  In her reply, Biron responded to the
defendants' argument regarding her failure to comply with the Local Rule as follows:

> But the Defendants have not allowed Ms. Biron to have <u>any</u> access to <u>any</u> legal materials or a typewriter since April 28, 2020. . . .
>
> Ms. Biron had to draft her [motions] by hand without <u>any</u> access to the Fed. R. Civ. P. or local rules or a typewriter. Now, these same defendants argue her motion should be denied for failure to follow court rules that they have kept her from accessing.
>
> Wherefore, Ms. Biron requests this honorable Court grant her motion for leave to file an amended complaint, order the defendants to stop sabotaging her ability to prosecute this case by barring her access to the law library and typewriter, or appoint an attorney to represent her . . . .

*Id.* Biron attached the emailed May 15 request for law library access and May 18 response denying access to this reply. *Biron v. Sawyer*, Dkt. 64 (D. Minn. June 1, 2020).

On June 16, 2020, Hiller responded to Biron's May 19 Informal Resolution Attempt, by writing on the form:

> During modified operations for COVID-19 pandemic, the BOP requires that inmates requesting access to the ELL demonstrate an imminent court deadline, defined as a deadline within the next 30 days and set by the Court. On 5/15/20, you did not have a deadline on above cited case. On 4/28/20 you were allowed access to ELL based on another case. You chose to work on another case instead.

*Biron v. Sawyer*, Dkt. 65 (D. Minn. June 25, 2020). Biron submitted the Informal Resolution Attempt form to the court in *Biron v. Sawyer*, as an exhibit in support of her reply regarding her motion to amend, with a cover letter she signed on June 23. Dkt. 65-1 (D. Minn. June 25, 2020). In the letter, Biron stated, "The situation has not been rectified," and "In sum, the defendants continue to prevent Ms. Biron from accessing the law library and typewriter to draft a proposed Amended Complaint in proper form unless and until this Court issues an order with a deadline." *Id.* at 2.

16

Meanwhile, in June and July 2020, Biron used the ELL on 5 different days. (Dkt. 56-8, Ex. H at 98, 100, 104 (June 11: 50 min.; June 18: 47 min.; June 25: 52 min.).) She used the ELL twice in July. (*Id.* at 89, 96 (July 2: 4 min.; July 16: 50 min.).)

### 3. Biron's Law Library and Typewriter Access in August 2020 and the Order and Report and Recommendation in *Biron v. Sawyer*

According to Kallis, in "mid-August 2020," there was a surge in inmates with COVID-19 at FCI-Waseca, and officials "were constantly reassessing modified operations" to minimize spread of the virus. (Dkt. 56 ¶ 18.) "To keep the institution operational, staff were tasked with additional job responsibilities. It was no longer feasible from an infection control or staffing standpoint to provide inmates with access to the ELL and typewriters in the Recreation Department." (*Id.*)

On August 20, 2020, Biron signed several papers that were filed in *Biron v. Sawyer*. First, she signed a handwritten Motion to Substitute Official Capacity Defendants with Their Successor. Dkt. 68 (D. Minn. Aug. 26, 2020). Second, she signed a proposed First Amended Complaint, the majority of which was typed with the last pages handwritten, containing a footnote apologizing for the handwritten portion and explaining as follows:

> While drafting this proposed First Amended Complaint, Defendant Hiller learned that I sought approval for extra time [over the 50 minutes allotted] in the law library to complete this document. She told the library officer that I did not have approval for extra time . . . . She maintains that I do not have a legitimate need to draft this document. Yet Hiller urged this Court to deny my motion to amend for failure to provide this document.

Dkt. 68-1 at 5 n.3 (D. Minn. Aug. 26, 2020). Accompanying the proposed First Amended Complaint was a copy of the typewritten complaint labeled "Redline Copy," on

which Biron handwrote strikeouts and additions reflecting the proposed amendments, which, in relevant part, substituted some defendants, added Biron's daughter as a plaintiff, and added claims for compensatory and punitive damages. *See generally* Dkt. 68-2 (D. Minn. Aug. 26, 2020). Third, Biron signed a letter addressed to the Clerk of Court, explaining that she was enclosing a motion to substitute defendants and a proposed First Amended Complaint and "'Redline Copy' to supplement [her] previously filed Motion for Leave to Amend Complaint." Dkt. 68-3 at 2 (D. Minn. Aug. 26, 2020). In this letter, Biron reiterated that she had been denied access to the law library by Hiller to draft her amended complaint; because of that denial, she was not aware of the rules that required her to file a proposed pleading and redlined copy; she became aware of those rules through the defendants' objections to her motion to amend; and she had been able to access the law library and typewriter to draft the proposed First Amended Complaint but was "cut off after only 50 minutes" because of Hiller's intervention, and so Biron had to handwrite part of the document. *Id.* at 1.

On August 21, 2020—the day after Biron wrote the documents described above but before those documents were received and docketed by the court, *see* Dkt. 68 (D. Minn. Aug. 26, 2020)—Judge Brisbois issued an Order and Report and Recommendation in *Biron v. Sawyer* addressing various motions. Dkt. 66 (D. Minn. Aug. 21, 2020).[13] As relevant to this case, first, Judge Brisbois denied Biron's motions for joinder, which sought to add her daughter as a co-plaintiff. *Id.* at 11. Second, Judge Brisbois concluded that Biron's claim was moot and therefore recommended granting the defendants' motion

---

[13]    The Order and Report and Recommendation is docketed at both Nos. 66 and 67.

to dismiss.  *Id.* at 20.  Third, Judge Brisbois denied Biron's motion to amend.  *Id.* at 21-28.

Addressing the motion to amend, Judge Brisbois first addressed violations of Local Rules on Biron's part, concluding that her "failure to comply in any way with the Local Rules governing motion practice in this District represents a sufficient, independent basis to deny" the motion to amend.  *Id.* at 22 (citation omitted).  The violations were that Biron (1) failed to confer with defendants' counsel regarding the motion and (2) "submitted insufficient materials describing the amendments she wished to specifically make even if the Court liberally construes Plaintiff's motion paper," as the motion was not accompanied by a proposed or redlined amended complaint, and "fail[ed] to inform the Court as to any specific factual amendments Plaintiff wishes to add."  *Id.* at 21-22.  In this case, Biron describes the denial of her motion to amend on the basis of failure to comply with the Local Rules in her Amended Complaint as follows:

> Because Plaintiff did not have access to the law library or typewriter, she failed to follow local and federal court rules, and because of this her motion for leave to amend her complaint was denied.

> Defendant Hiller's actions in denying law library access and access to a typewriter severely prejudiced Plaintiff in that civil action.

> The Defendants in case no. 19-cv-2938 based their objection on the Plaintiff's failure to follow court rules which they prevented her from accessing.

(Dkt. 5 ¶¶ 16-18 (paragraph numbering omitted).)

In the Order and Report and Recommendation in *Biron v. Sawyer*, Judge Brisbois, "[i]n an abundance of caution, however, . . . consider[ed] the merits of [Biron's motion to amend], on the limited record" available.  Dkt. 66 at 22.  He noted that Biron sought to

amend only to include damages claims against certain defendants in their individual

capacities, and that, though Biron had not specified a legal basis or cause of action for the

damages claims, it appeared she sought to add individual capacity *Bivens* claims based on

the defendants' violation of Biron's "First Amendment right of familial association when

said Defendants restricted Plaintiff's ability to communicate with her daughter." *Id.* at

23-24 (D. Minn. Aug. 21, 2020). Judge Brisbois analyzed the claim in detail and found

that Biron's proposed First Amendment claim was not a cognizable *Bivens* claim, and

thus Biron's proposed amendment would be futile. *Id.* at 24-28.

The day after Judge Brisbois' Order and Report and Recommendation issued, on

August 22, 2020, Biron signed a handwritten document entitled "Verification of Date of

Filing," in which she swore under penalty of perjury that her proposed First Amended

Complaint and Motion to Substitute Official Capacity Defendants were deposited in the

mail, and so deemed filed, on August 20, i.e., before the Order and Report and

Recommendation issued. *Biron v. Sawyer*, Dkt. 69 (D. Minn. Aug. 27, 2020). The

verification was accompanied by a letter to the Clerk of Court in which Biron stated, "I

never dreamed Magistrate Brisbois would outright deny my motion to amend knowing

that I have been restricted from all access to the law library by the very defendants I am

suing, and was, therefore unable to draft and file the proposed First Amended Complaint

until now." Dkt. 69-1 (D. Minn. Aug. 27, 2020). Biron stated that her verification

established that her proposed Amended Complaint was filed a day before Judge Brisbois

"dismissed [her] case," and that Judge Brisbois did so "without even reviewing my

proposed amendments, in which I know I stated a meritorious claim" because the

proposed amendments arrived in the mail after the Order and Report and Recommendation was issued.  *Id.*  The letter concluded, "I will be objecting to his report and recommendation, but perhaps he would like to review the complaint, and reconsider."  *Id.*

Biron used the ELL on three different days in August 2020, all after the Order and Report and Recommendation issued in *Biron v. Sawyer*.  (*See* Dkt. 56-8, Ex. H at 62-64 (Aug. 27: 136 min.; Aug. 30: 6 min.; Aug. 31: 23 min.).)

### 4.    Biron's Law Library and Typewriter Access in September 2020 and the Conclusion of *Biron v. Sawyer*

According to Biron's Amended Complaint in this action, "[w]hen [she] received the Report and Recommendation [in *Biron v. Sawyer*], she again requested time at the law library to draft her objections to the thirty-page order," and "Defendant Hiller, with Defendant Warden Starr's approval denied Plaintiff's request."  (Dkt. 5 ¶¶ 19-20.)  Biron alleges that she "specifically advised that she needed 8-10 hours of research time, 8-10 hours of drafting time (by hand which she could do on her unit), and 2-3 hours at a typewriter," but "the Defendants told Plaintiff that she had to use her one (1) hour (actually 50 minutes) of recreation/exercise time to do all of her legal work on all of her cases."  (*Id.* ¶¶ 21, 23.)

On September 1, 2020, Biron signed a handwritten Motion for Extension of Time to File Objections in *Biron v. Sawyer*, generally asserting the same facts described above in the Amended Complaint regarding her requests for time to research and use a typewriter.  Dkt. 71 (D. Minn. Sept. 8, 2020).  Biron stated, "At the rate of 50 minutes per day, the Plaintiff cannot meet her deadline of 9/9/20.  (14 days from service on 8/26/20),"

and requested a 30-day extension. *Id.* (*See also* Dkt. 5 ¶ 22 (alleging that Biron "was forced to seek an extension of 30-Days").) On September 10, 2020, U.S. District Judge Susan Richard Nelson, "find[ing] good cause to grant an extension," extended the deadline for filing objections to September 23, 2020. *Biron v. Sawyer*, Dkt. 73 (D. Minn. Sept. 10, 2020). (*See also* Dkt. 5 ¶ 22 ("[Biron] was granted a 14-Day extension.").)

Meanwhile, on September 3, 2020, Biron "used her 50 minutes to rush to draft her initial Complaint in this present case." (Dkt. 5 ¶ 24; *see also* Dkt. 1-2 (original complaint).) She alleged that "[s]he has not had access to a typewriter since." (*Id.*; *see also* Dkt. 24 at 2.) Biron also used the ELL several times from September 1 to September 10. (Dkt. 56-8, Ex. H at 54-58, 60-61 (Sept. 1: 31 min.; Sept. 2: 44 min.; Sept. 4: 32 min.; Sept. 5: 26 min.; Sept. 8: 37 min.; Sept. 9: 51 min.; Sept. 10: 54 min.).)

On September 14, 2020, access to the ELL was activated in Biron's housing unit, available via one TRULINCS terminal, though no typewriter was made available. (Dkt. 5 ¶ 25; *see also* Dkt. 24 at 2; Dkt. 56 ¶ 19 (Kallis Decl.); Dkt. 60 at 2; Dkt. 70 ¶¶ 14, 18.) Kallis states that "[i]nmates were permitted to log into the ELL for two hours, with thirty minutes between log-in periods," which "addressed our concerns about inmates monopolizing the terminals for the ELL at the expense of inmates being able to use the terminals for electronic communication." (Dkt. 56 ¶ 19.) She also states that, while terminals had to be disinfected between users, having the ELL available in the housing units minimized the risk of COVID-19 spreading between units, and additionally, "because staff would not have to escort inmates from the housing unit to the ELL location, it minimized the amount of direct staff contact with positive or exposed inmates

and allowed staff to devote their time to their other duties essential to institution operations." (*Id.*) Kallis acknowledges that "Program Statement 1315.07 provides inmates preparing legal documents should be allowed to use a typewriter '[u]nless clearly impractical.'" (*Id.* ¶ 20.) But while the ELL was made available, FCI-Waseca officials "declined to place typewriters in the housing units," "anticipat[ing] inmates would be restricted to their housing units for a relatively short period of time" and "would have access to typewriters when they were again permitted to use the ELL in the Recreation Department." (*Id.*) Further, according to Kallis, "typewriters were a potential source of COVID-19 transmission as there are more touch surfaces, such as knobs and levers for paper and ribbon insertion, requiring disinfection on a typewriter than on a computer keyboard." (*Id.*) Biron used the ELL several times from September 14 to September 22. (Dkt. 56-8, Ex. H at 51-54 (Sept. 14: 121 min.; Sept. 15: 94 min.; Sept. 16: 100 min.; Sept. 18: 34 min.; Sept. 19: 4 min.; Sept. 21: 30 min.; Sept. 22: 6 min.).)

Biron alleges that on or about September 16, 2020, she "advised Defendant Hiller in writing that her deadline in case no. 19-cv-2938 was extend to 9/23/20" and requested a typewriter to draft her objections. (Dkt. 5 ¶ 26.) She alleges, "Defendant Hiller responded, 'You may draft your document in pen or pencil.'" (*Id.*) According to the objections she later filed, Biron tested positive for COVID-19 on September 17, 2020 and "los[t] almost a full day's time for preparing this document," as she had to move to a different housing unit. *Biron v. Sawyer*, Dkt. 74 at 3 n.2 (D. Minn. Sept. 28, 2020). Biron alleges that on September 21 and September 23, 2020, she "again requested access to a typewriter . . . via emails to Defendants Starr and Hiller, and verbally to Defendants

Starr and Hiller," and "advised Defendant Starr that she was violating the Code of Federal Regulations." (Dkt. 5 ¶ 27.) Biron's "request was denied and she was forced to draft her 16-page, 3300-word Objection in pen, by hand, which used up hours of time she needed, and did not have, for substantive research and drafting." (*Id.* ¶ 28.)

On September 23, 2020, Biron signed handwritten Objections to the Order and Report and Recommendation. *Biron v. Sawyer*, Dkt. 74 (D. Minn. Sept. 28, 2020). She referred to the denials of her requests to use a typewriter. *Id.* at 1, n.*, 2 n.1. Biron objected to the denial of her motion to amend, beginning by stating, "Very early in this litigation, Plaintiff made her intent to amend her complaint known to the Defendants and this Court. Her goal, because of the difficulties in drafting legal documents in prison, was to draft and file one (1) amended complaint as soon as this Court ruled on [her motion for joinder]." *Id.* at 4. But, Biron stated, that ruling "did not come," and when she learned of the defendants' arguments in their Reply in support of their motion to dismiss, "she knew she could not wait any longer to seek leave to amend." *Id.* Biron described her request for access to the law library, the denial of that request because of the absence of an imminent court deadline, and her handwritten motion to amend "that requested the Court allow fourteen (14) days after its decision on the motions for joinder – an imminent deadline – to file the amended complaint." *Id.* at 4-5.

Biron stated that the defendants opposed her motion only on the basis that she had not followed court rules, "rules that Defendant Hiller prevented her from accessing." *Id.* at 5. Biron stated that her Reply "informed the Court that these rules were not followed because the Defendants would not allow her access to the law library to learn of these

rules." *Id.*  Biron described the exhibits that she filed regarding the denial of law library

access and that she, "again, advised the Court that she required an order with a deadline

so that she could access the law library and typewriter to prepare her proposed first

amended complaint." *Id.* at 5-6.  Biron stated that after "weeks went by with no help in

the form of an order with a deadline from this Court," she "determined she would have to

attempt to type her proposed first amended complaint once her unit's quarantine COVID-

19 quarantine lockdown ended, during her 50 minute per week law library time." *Id.* at 6.

She described her request for additional time; the denial of that request; being stopped

while using the typewriter on August 20, 2020 "because she kept typing into the next

hour;" later finishing her proposed First Amended Complaint by hand; and mailing the

proposed pleading and redline copy to the court. *Id.* & n.3.  Contending that those

documents were deemed filed before Judge Brisbois issued his Order and Report and

Recommendation, Biron argued that the denial of her motion to amend on the basis of her

failure to comply with court rules "made inaccessible to her by the Defendants in the

middle of a COVID-19 pandemic lockdown is clearly erroneous and contrary to law, and,

regardless, Plaintiff did substantially comply with the rules before the magistrate denied

the motion." *Id.* at 7; *see also id.* at 8 (" . . . Plaintiff was barred access to these rules.

She was prevented from accessing and following the federal rules by the very same

defendants she is suing, and the magistrate judge simply ignored this fact, making no

mention of it in his Order and R.&R.").  Biron further stated, "Nor did the Court issue an

order with a deadline as requested by Plaintiff so she could convince the Defendants to

let her use the law library." *Id.* at 8.

Biron also objected to the denial of the motion to amend on the basis of futility, arguing that the defendants had waived any futility argument and that her *Bivens* claim was not futile. *Id.* at 9-14. She further objected to the recommendation to grant the defendants' motion to dismiss "because the Motion for Leave to Amend Complaint should have been granted" and "[t]he allegations in the proposed amended complaint allege sufficient facts, when accepted as true, to overcome Defendants' mootness argument." *Id.* at 14-15.

On September 30, 2020, Judge Nelson issued an Order Adopting Order and Report and Recommendation. *Biron v. Sawyer*, Dkt. 75 (D. Minn. Sept. 30, 2020). Reviewing Judge Brisbois' findings that Biron had failed to comply with Local Rules requiring that (1) parties meet and confer on nondispositive motions and (2) motions seeking leave to amend a pleading be accompanied by a copy of the proposed amended pleading and a redlined version, Judge Nelson "assign[ed] no error in the magistrate judge's denial of Biron's Motion to Amend on procedural grounds." *Id.* at 9-10. Observing that "Biron is required to abide by the substantive and procedural rules applicable to this Court, even though she is self-represented," and was formerly licensed to practice law, Judge Nelson reasoned, "[Biron] has capably represented herself in this action. Her handwritten filings are very legible, well-organized, and cite appropriate legal authority. Had she sought additional time or a stay of proceedings due to limited access to the law library and typewriters, she was certainly able to seek such relief." *Id.* at 10-11. Judge Nelson therefore affirmed the denial of Biron's motion to amend on the basis of the violations of Local Rules and declined to address Judge Brisbois' conclusions regarding futility, as

"this ruling [on procedural grounds] fully resolves the motion." *Id.* at 11-12. Judge

Nelson ordered *Biron v. Sawyer* dismissed without prejudice. *Id.* at 17.

In the days between Biron's signing of her objections and Judge Nelson's

September 30, 2020 Order Adopting Order and Report and Recommendation, the

TRULINCS Inmate Usage Report shows that Biron used the ELL on September 24 (124

minutes) and September 28 (50 minutes). (Dkt. 56-8, Ex. H at 49-50.) Biron, however,

stated, that "[f]rom September 24-29 the ELL was shut off, and then back on but set to

shut down at 7:00 p.m. for no apparent reason." (Dkt. 24 at 2.)

### 5.    Biron's Law Library and Typewriter Access from October 2020 Through June 2021

In October 2020, Biron used the ELL several times a week for periods totaling

from 6 minutes to 168 minutes per day (*see* Dkt. 56-8, Ex. H at 32-48); this case was

docketed in this Court (Dkt. 1); and Biron signed two handwritten filings (Dkts. 5, 6).

Biron also used the ELL several times a week in November 2020. (*See* Dkt. 56-8,

Ex. H at 21-31.) On November 12, she signed multiple handwritten filings, including

documents related to opposing the Motion to Screen and Stay (Dkts. 18-19, 21) and

documents related to her Motion for Preliminary Injunction (Dkts. 22-28). In these

filings, Biron stated that the ELL was currently on, but case law had not been updated

since September, and that she had not had access to a typewriter since the first week of

September. (Dkt. 24 at 2; Dkt. 25 ¶ 6.) She noted that she was currently "100%

restricted to her housing unit" and "[t]he situation is volatile and fluxuating [sic]." (Dkt.

24 at 1.) She also described that she needed access to new case law via the ELL and a

typewriter to effectively prosecute her cases, noting in particular: three pending petitions

for rehearing or rehearing en banc in the First Circuit Court of Appeals; a planned

"petition for permission to file a successive motion under 28 U.S.C. § 2255" with a

March 2021 deadline; a memorandum of law regarding the § 2255 petition that must be

submitted to an attorney by December 1, 2020; a pending appeal in the Fifth Circuit

Court of Appeals; and this case.  (Dkt. 25 ¶¶ 5-10.)  Biron further stated that her hand

becomes very sore from handwriting her documents and that "Defendants, particularly

Defendant Hiller, has told Plaintiff that it is 'clearly impractical' for her to have access to

a typewriter because of COVID-19."  (*Id.* ¶¶ 11, 14.)  Biron also signed additional

handwritten documents later in the month, on November 23, regarding the Motion for

Preliminary Injunction.  (Dkts. 31-33.)

　　　"Towards mid-November," according to Kallis, "as the number of COVID-

positive inmates decreased, FCI Waseca again permitted inmates to use the ELL and

typewriters in the Recreation Department."  (Dkt. 56 ¶ 21.)  As noted previously, Kallis

states, "Throughout the COVID-19 pandemic, Biron has received access to the ELL

consistent with these procedures."  (*Id.* ¶ 22 (citing Dkt. 56-8, Ex. H (2020 TRULINCS

Inmate Usage Report).)

　　　The TRULINCS Inmate Usage Report filed by Defendants ends with records for

December 31, 2020 (*see generally* Dkt. 56-8, Ex. H); it indicates that in December 2020,

Biron used the ELL about two to three times a week, for periods ranging from 4 to 82

minutes per day (*id.* at 1-20).  In December 2020 and January 2021, Biron signed

handwritten filings related to her Sur-Reply to the Motion to Screen and Stay (Dkts. 41-

42) and letters to U.S. District Judge Wilhelmina M. Wright regarding the opening of her mail (Dkts. 43, 51; *see infra* n.17).

From February 2021 through April 2021, Biron signed several handwritten letters and other filings.  (*See* Dkts. 60-62, 64, 67, 69-71.)  In a filing dated February 16, Biron noted that she had three petitions for certiorari to the U.S. Supreme Court due by April 12, 2021 (Dkt. 60 at 1 & n.2) and a motion to litigate in *Biron v. Hurwitz* (*id.* at 1-2), *see* No. 19-cv-57 (SRN/LIB), Dkt. 69 (D. Minn. Feb. 11, 2021).[14]  On April 29, 2021, she noted that she is required to remain on her housing unit 23 or 24 hours per day.  (Dkt. 70 ¶ 19.)

In June 2021, Biron signed two typewritten letters to the Court regarding ELL access in her housing unit and requesting that such access be restored.  (Dkts. 73, 74.)  In the first, dated June 13, Biron stated that ELL access in the housing unit had been removed on June 8 and would not be restored because "access to the recreation building has increased somewhat" and the ELL was available in that location.  (Dkt. 73 at 1.)  She stated that the ELL is accessible an average of 3 hours per day and that the terminals timeout after 2 hours, with a half-hour wait required before the next session.  (*Id.*)  Biron submitted emails with FCI-Waseca officials stating, as of June 11, "Access to the law library is available in accordance with Program Statement 1315.07, Legal Activities, Inmate.  The current schedule allows for 4 to 4.5 hours per day Monday - Friday and 1.5 hours to 3.5 hours on weekend days . . . ."  (Dkt. 73-1.)  Biron's June 20 letter described,

---

[14]    This motion, Biron's Motion Under Fed. R. Civ. P. 60(b)(2), was later denied. *Biron v. Hurwitz*, No. 19-cv-57 (SRN/LIB), Dkt. 77 (D. Minn. June 23, 2021).

and attached, an email from Hiller "written in response to my request for more ELL time to prepare a petition for a writ of mandamus, [with] her strange interpretation of the CFRs to require an imminent court deadline for law library access." (Dkt. 74.) Biron states, "Especially troubling, . . . is her belief that it is legal for her to require me to 'demonstrate that <u>all</u> of [my] leisure time in recreation is being used for legal research.'" (*Id.* (quoting Dkt. 74-1 and adding emphasis).)

### E.    Factual Background Regarding Mail Procedures

Biron alleges that "[a]s of July 2019, Defendants began refusing to deliver and returning to the post office incoming general correspondence mail without opening the envelope and inspecting its contents if the envelope was not white and if labels such as address labels were on the envelope's exterior." (Dkt. ¶ 31.) Kallis states that the relevant changes in mail handling were effective on August 1, 2019, though inmates were informed of the changes on July 1. (Dkt. 56 ¶ 26; Dkt. 56-10, Ex. J (July 1, 2019 Notice to Inmate Population, "Inmate Mail Procedures").) Kallis confirms that, among other procedures and requirements, "[a]ll incoming general correspondence envelopes and paper must be white in color" and "[i]ncoming general correspondence utilizing a label for either the recipient and/or sender may be rejected (except for inmate to inmate correspondence); requiring the recipient and sender information to be completed either in ink or through an address stamp." (Dkt. 56 ¶ 26 (citing Dkt. 56-10, Ex. J).)

Kallis describes that these mail handling procedures—FCI-Waseca's "enhanced general correspondence procedures"—were implemented pursuant to a September 14, 2018 BOP memorandum entitled, "Incoming Inmate Correspondence Procedures for

Contraband Prevention." (*Id.* ¶ 23; *see* Dkt. 56-9, Ex. I.) "In response to an increase in the introduction of narcotics and other prohibited drugs or controlled substances through the mail, the Memorandum authorized Wardens, consistent with current policy, to implement a series of procedures designed to assist with the detection of narcotics." (Dkt. 56 ¶ 23.) According to Kallis, "[i]ncoming mail is one of the primary ways for inmates to introduce narcotics into a secure facility," through paper items soaked in liquid forms for narcotics, narcotics added to ink, and strips with narcotics hidden in a piece of mail. (*Id.* ¶ 24.) Kallis describes a multi-step, "labor intensive" examination process for incoming mail "[t]o combat the introduction of narcotics through the mail." (*Id.* ¶ 25.)

With respect to the specific procedures Biron identifies, Kallis states, first, "The requirement for white paper and envelopes assists staff in identifying items which had been soaked in narcotics and then dried; watermarks are more visible on white paper," which "in turn reduces the number of suspicious items needing to be photocopied by staff for delivery to inmates," and, second, "[S]uboxone is often hidden under labels, stamps, and envelope flaps. Prohibiting labels eliminates one location for concealing narcotics; the removal of stamps and envelope flaps reduces the possibility of inmates receiving narcotics otherwise concealed in those locations." (*Id.* ¶¶ 28, 30.)

Biron alleges that FCI-Waseca's mail procedures "resulted in important mail from legal associations and others being returned to the senders unopened simply for being in orange-colored legal-size envelopes. Important legal information relevant to Plaintiff's active litigation was not delivered to Plaintiff, returned to the post office, which returned the mail to sender, solely because of a return address label on the envelope's exterior."

(Dkt. 5 ¶ 31.)  She also alleges that "[f]ailure to deliver important state of N.H. legal information prejudiced Plaintiff in her litigation against FBOP officials at FMC Carswell, Texas."  (*Id.* ¶ 32.)

## F.    Procedural Background in This Action

As described above in Section I.B, the Amended Complaint asserts violations of Biron's First Amendment rights based on restrictions imposed by Defendants with respect to the law library, access to a typewriter, and prison mail procedures.

Shortly after Biron filed her Amended Complaint, on November 2, 2020, Defendants filed the Motion to Screen and Stay and supporting materials.  (Dkts. 7-12.) Biron filed a Response, a Memorandum opposing the Motion to Screen and Stay, and supporting materials on November 15, 2020.  (Dkts. 18-21.)  Defendants filed a Reply and supporting declaration on December 2, 2020.[15]  (Dkts. 34-35.)  Biron filed the Motion for Leave to File Sur-Reply, asserting that Defendants' Reply "makes several arguments that are incorrect as a matter of law," and the proposed Sur-Reply on December 11, 2020.  (Dkt. 41 at 1; Dkt. 42.)  Defendants did not respond to Biron's Motion for Leave to File Sur-Reply.  As there has been no opposition and in order to decide the Motion to Screen and Stay on a complete record, Biron's Motion for Leave to File Sur-Reply (Dkt. 41) is granted, and the Court has considered the Sur-Reply.

---

[15]    On November 18, 2020, the Court ordered Defendants to file "a reply memorandum in support of its Motion to Screen and Stay Proceedings explaining its position" as to several issues in that Motion.  (Dkt. 29 at 4-5.)  The Court also set deadlines for briefing as to the Motion for Preliminary Injunction.  (*Id.* at 5.)

On November 16, 2020, the same day that she filed her opposition to the Motion to Screen and Stay, Biron filed the Motion for Preliminary Injunction and supporting materials.  (Dkts. 22-28.)  She filed the Motion for Leave to Supplement Motion for Preliminary Injunction, stating, "The facts set forth in the accompanying Verified Supplement are new since the preliminary injunction motion was filed and are material to any opposition contemplated by the Government," and the proposed Verified Supplement to Motion for Preliminary Injunction on November 30, 2020.  (Dkt. 31 at 1; Dkt. 32.) Defendants did not respond to Biron's Motion for Leave to Supplement Motion for Preliminary Injunction.  As there has been no opposition and in order to decide the Motion for Preliminary Injunction on a complete record, Biron's Motion for Leave to Supplement Motion for Preliminary Injunction (Dkt. 31) is granted, and the Court has considered the supplement.

After several requests for extension of time to respond to the Amended Complaint and the Motion for Preliminary Injunction and orders setting such deadlines (Dkts. 13, 17, 29, 37, 40, 44, 48), and in response to a letter from Defendants clarifying their last request for an extension (Dkt. 49), on January 25, 2021, the Court ordered Defendants to respond to the Amended Complaint and the Motion for Preliminary Injunction on or before February 8, 2021 (Dkt. 50).  On February 8, Defendants filed the Motion to Dismiss (Dkt. 52) and a combined Memorandum in Support of Defendants' Motion to Dismiss or for Summary Judgment and in Opposition to Plaintiff's Motion for Preliminary Injunction, with supporting materials (Dkts. 53-58).

On February 17, 2021, the Court set a schedule for the remaining briefing, ordering that Biron's opposition to the Motion to Dismiss and reply brief in support of the Motion for Preliminary Injunction were due by March 19, 2021, and Defendants' reply brief in support of the Motion to Dismiss was due ten days after Biron's opposition was docketed.[16] (Dkt. 59.)  Biron filed her Reply in support of the Motion for Preliminary Injunction on February 25, 2021.  (Dkt. 60.)  She moved for "an extension or stay of the other deadlines until you grant (or deny) the preliminary injunction" on February 26, 2021.  (Dkt. 64.)  On March 9, The Court granted that request in part by setting a deadline of April 9 for Biron's response (Dkt. 66 at 2-3), but then on March 12, Biron's Reply in support of her request for an extension or stay was docketed, which asked, "[i]f the Court is inclined to deny the stay," that her deadline to respond be extended to May 1, 2021 (Dkt. 67 at 2).  Noting "[i]t appears that [the March 9] Order may not have reached Plaintiff prior to the filing of her present Reply," the Court ordered on March 15, 2021 that Biron's deadline to respond to the Motion to Dismiss be May 3, 2021, with Defendants' reply brief due 14 days after Biron's response.  (Dkt. 68 at 2-3.)  Biron filed her response to the Motion to Dismiss and supporting materials on May 3, 2021 (Dkts. 69-71), and Defendants filed their Reply on May 17, 2021 (Dkt. 72).

Having granted Biron's Motion for Leave to Supplement Motion for Preliminary Injunction (Dkt. 31) and Motion for Leave to File Sur-Reply (Dkt. 41), the Court now

---

[16]   This Order also set a deadline for Defendants to respond to Biron's Motion for Leave to Supplement Motion for Preliminary Injunction (Dkt. 31) and Motion for Leave to File Sur-Reply (Dkt. 41), to the extent they wished to respond.  (Dkt. 59.)  As noted above, Defendants did not respond.

turns to the Motion to Dismiss, the Motion for Preliminary Injunction, and the Motion to

Screen and Stay, in that order.[17]

## II.    DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT (DKT. 52)

### A.    Legal Standard for a Motion to Dismiss for Failure to State a Claim and for Summary Judgment

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

the pleadings are construed in the light most favorable to the non-moving party, and the

facts alleged in the complaint must be taken as true.  *See Ashley Cty., Ark. v. Pfizer, Inc.*,

552 F.3d 659, 665 (8th Cir. 2009).  In addition, a court must afford the plaintiff all

reasonable inferences from those allegations.  *See Blankenship v. USA Truck, Inc.*, 601

F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under

Rule 12(b)(6), litigants must properly plead their claims under Federal Rule of Civil

---

[17]    In addition to the filings related to motions described above, Biron has sent several letters to the Court.  Two of the letters were addressed to District Judge Wright and stated that FCI-Waseca officials had opened and, Biron believed, read her legal mail.  (Dkt. 43 (Dec. 30, 2020); Dkt. 51 (Feb. 3, 2021).)  However, the Amended Complaint does not assert a claim based on the opening of legal mail (*see* Dkt. 5 ¶¶ 45, 47, 50), and the letters did not seek any relief.  Further, the mail at issue in Biron's February 3, 2021 letter was sent from the Department of Justice to Biron (Dkt. 51-1), and thus could not be attorney-client privileged.  Biron also sent a letter with her Reply in support of the Motion for Preliminary Injunction, filed on February 25, 2021, "request[ing] a ruling on her motion as the relief requested therein directly bears on her ability to file her response/opposition to [the Motion to Dismiss]."  (Dkt. 61.)  Biron sent two further letters, as described in Section I.D.  The first was filed on June 18, 2021 regarding recent events related to ELL access, and requesting that the Court "order the defendants to re-activate the ELL on [her] housing unit."  (Dkt. 73.)  The second was filed on June 28, 2021, regarding Hiller's denial of her June 16 request for more time for legal research and access to the ELL in her housing unit and requesting a hearing on her Motion for Preliminary Injunction and an order requiring Defendants to "maintain the present (before 6/8/21) status quo by reactivating the ELL on [her] housing unit."  (Dkt. 74.)  The Court has considered those two letters in connection with this Order and Report and Recommendation.

Procedure 8 and meet the principles articulated by the U.S. Supreme Court in *Iqbal* and *Twombly*.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

Following *Twombly* and consistent with *Iqbal*, the Eighth Circuit explained:

> While a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. A district court, therefore, is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint.

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (cleaned up). Pro se complaints are construed liberally, but they still must allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citations omitted).

If matters outside the pleadings "are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "Though matters 'outside the pleadings' may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)). Thus, while courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned, without converting the motion into one for summary judgment. *Id.*; *see also Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012); *E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 962 (D. Minn. 2018) (citing *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (discussing court records)) ("Also included [in

materials that are necessarily embraced by the pleadings] are public records that do not contradict the complaint."), *aff'd*, 971 F.3d 747 (8th Cir. 2020).

Defendants have moved for summary judgment in the alternative, which the Court addresses in Section II.B.2.d. (Dkt. 52.) Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As this wording suggests, the initial burden of showing that no genuine issue of material fact exists lies with the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is "material" only if resolving it might affect a suit's outcome under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, a factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"). When assessing a summary judgment motion, a court should believe the nonmovant's evidence and draw all justifiable inferences in the nonmovant's favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

## B.    Official Capacity Access to Courts Claims

Biron asserts that Defendants violated her rights under the First Amendment by interfering with her access to the courts, specifically by failing to allow her meaningful, adequate or reasonable access to the law library and typewriter; timely update the ELL;

provide state law resources in the library; and deliver Biron's mail which contained legal information.  (Dkt. 5 ¶¶ 40-44.)  Defendants argue that Biron "failed to sufficiently demonstrate an actual injury," and so her claims should be dismissed.  (Dkt. 55 at 13.)

### 1.    Legal Standard for Access to Courts Claims

"The Constitution guarantees prisoners a right to access the courts."  *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007) (collecting cases identifying constitutional provisions guaranteeing access to the courts).  "For prisoners, meaningful access to the courts 'requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.'"  *Id.* (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)).  "[P]risoners have a constitutional right of access to the courts but this right does not guarantee the ability to discover grievances, and to litigate effectively once in court."  *Zink v. Lombardi*, 783 F.3d 1089, 1108 (8th Cir. 2015) (cleaned up) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)).  The U.S. Supreme Court has held that a prisoner's right of legal access "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  *Lewis*, 518 U.S. at 356. The Court continued:

> When any inmate . . . shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates that the State has failed to furnish "adequate law libraries or adequate assistance from persons trained in the law."

*Id.* (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)).

However, a prisoner alleging a violation of her right of access to the courts must allege an actual injury. *See id.* at 349. "Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* at 351. Instead, "a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *White*, 494 F.3d at 680 (citations omitted); *see also id.* (quoting *Lewis*, 518 U.S. at 353) ("To prove actual injury, White must 'demonstrate that a nonfrivoulous [sic] legal claim had been frustrated or was being impeded.'").

### 2. Analysis of Official Capacity Access to Courts Claims

The Court recommends dismissal of Biron's access to courts claims for failure to adequately and plausibly allege an actual injury that resulted from the alleged denial of access. As explained below, the Court recommends dismissal under Rule 12(b)(6) based on the Amended Complaint and other materials it necessarily embraces.

### a. Biron's Allegations Regarding *Biron v. Sawyer*

First, the Court considers the allegations in the Amended Complaint regarding Biron's motion to amend in *Biron v. Sawyer*. Biron alleges that Hiller's denial of access to a typewriter and the ELL to draft her amended complaint caused Biron's failure to "follow local and federal court rules, and because of this, her motion for leave to amend her complaint was denied" in *Biron v. Sayer*, resulting in "severe prejudice." (Dkt. 5

¶¶ 15-18.)  She also identifies Hiller and Starr's refusal to provide her with sufficient access to the ELL and access to a typewriter to draft her objections to the Order and Report and Recommendation in *Biron v. Sawyer* as a basis for her claim, although she does not identify any prejudice resulting from this refusal.  (*Id.* ¶¶ 19-28.)

Defendants concede that "[Biron's] allegations regarding the motion to file an amended complaint [in *Biron v. Sawyer*] are of the type that *could* support a claim." (Dkt. 55 at 17.)  However, they first argue that Biron's allegations on this topic "are demonstrably false" because the motion to amend "was denied because it was legally insufficient, not because she failed to follow a technical rule unknown to her because of a problem with access to legal materials."  (*Id.* at 17-18 (citations omitted).)  Defendants further argue that "when Biron raised similar arguments regarding ELL and typewriter access in [*Biron v. Sawyer*] in connection with her objections to Judge Brisbois' R&R recommending dismissal of her claims, Judge Nelson examined and rejected her arguments."  (*Id.* at 20.)

Biron responds that "the district court in fact did <u>not</u> deny the amendment for failure to state a claim under *Bivens*, but for failure to follow court rules made inaccessible to her by defendants," and points to Judge Nelson's statement that "'because the court agrees with the Magistrate Judge's nondispositive basis for denying leave to amend, it need not reach the substantive basis for his ruling.'"  (Dkt. 69 at 13 (quoting *Biron v. Sawyer*, Dkt. 75 at 9 (D. Minn. Sept. 30, 2020).)  Biron argues that she has sufficiently alleged an actual injury because not following the Local Rules—which she

contends was due to Defendants' actions—"caused the denial of her Motion to Amend and, consequently, the dismissal of her case." (*Id.*)

In their Reply, Defendants focus on Judge Nelson's comments in *Biron v. Sawyer* that Biron had capably represented herself and that Biron could have sought more time in light of her limited access to the law library. (Dkt. 72 at 1-2.) They argue that "it was not FCI-Waseca's COVID-19 related restrictions that caused Biron harm in [*Biron v. Sawyer*], but rather her decision not to request additional time to draft her pleadings when needed." (*Id.* at 2 (citations omitted).) In other words, Defendants argue that the injury resulted from Biron's conduct, not theirs.

The Court has reviewed Judge Brisbois' August 21, 2021 Order and Report and Recommendation and Judge Nelson's September 30, 2020 Order Adopting Order and Report and Recommendation. It is plain that Judge Nelson based her affirmance of Judge Brisbois' denial of leave to amend on Biron's procedural failings—both her failure to meet and confer and to follow the Local Rule regarding amending pleadings—not the futility of Biron's proposed *Bivens* claim. *See Biron v. Sawyer*, Dkt. 75 at 9 (D. Minn. Sept. 30, 2020). The Court focuses on the procedural failings rather than Defendants' original futility-based argument. As to the procedural failings, as explained below, the Court concludes that Biron's litigation strategy, not the limitations on access to the ELL and typewriter, resulted in denial of leave to amend in *Biron v. Sawyer*.

Biron's motion to amend, filed on May 20, 2020, is a single-page handwritten document seeking "leave to amend [the] Complaint to include damages against

Defendants Hiller and Barnes in their individual capacities."[18]  *Biron v. Sawyer*, Dkt. 59 (D. Minn. May 20, 2020).  Biron did not file a meet and confer statement, and it appears undisputed that she did not meet and confer with the defendants regarding that action.[19] *Biron v. Sawyer*, Dkt. 66 at 21 (D. Minn. August 21, 2020) ("There is no indication in the Plaintiff's moving paper that she has attempted to meet and confer with Defendants regarding the relief sought in Plaintiff's Motion.  There is no meet and confer statement and there is no indication in the record, whatsoever, that Plaintiff has conferred with Defendants' counsel in any way regarding her Motion to amend her Complaint.").  On May 28, 2020, the defendants in *Biron v. Sawyer* filed an opposition to the amendment based on Biron's failure to file a copy of the proposed amended pleading and a version showing how the proposed amended pleading differs from the operative pleading, as well as Biron's failure to specify the relief requested in violation of Federal Rule of Civil

---

[18]    Biron apparently had planned this amendment at least as of December 2019 but chose to seek leave at a later time because she preferred to avoid having to file multiple amended complaints.  *Biron v. Sawyer*, Dkt. 15 (D. Minn. Dec. 16, 2019) (stating that once she and her daughter received emergency relief of being able to communicate with each other, "they intend to . . . file an amended complaint adding claims for damages"); *see also* Dkt. 74 at 4 (D. Minn. Sept. 28, 2020) ("Very early in this litigation, Plaintiff made her intent to amend her complaint known to the Defendants and to this Court.  Her goal, because of the difficulties in drafting legal documents in prison, was to draft and file one (1) amended complaint as soon as this Court rules on [her motions for joinder].").  Biron does not explain why, having planned to amend for several months, she did not research the relevant Local Rules and Federal Rules earlier.

[19]    It may be, based on Biron's May 15, 2020 email, that she did not wish to meet and confer because she did not want to give the defendants advance notice of the proposed amendment.  *See Biron v. Sawyer*, Dkt. 64 (D. Minn. June 1, 2020) ("My last request for access to the law library for preparation for possible litigation was denied by you.  I request a 2-hour block of time in the law library concerning case no. 19-cv-2938.  I'll not explain to you the particular purpose as you are a defendant in that case.").

Procedure 7(b).  Dkt. 61 (D. Minn. May 28, 2020).  Defendants quoted the relevant

language of Local Rule 15.1(b) in their opposition.  *Id.* at 1.

Biron filed a reply in support of her motion to amend on June 1, 2020, which she

signed on May 28, 2020.  *Biron v. Sawyer*, Dkt. 63 (D. Minn. June 1, 2020).  In her reply,

she acknowledged that she had been told the evening of May 28 that the defendants

objected to her motion because "she did not comply with certain local rules and federal

rules of civil procedure."  *Id.* at 1.  She stated that she had not been allowed "<u>any</u> access

to <u>any</u> legal materials or a typewriter since April 28, 2020."  *Id.*  She asked the Court to

grant her motion, to "order the defendants to stop sabotaging her ability to prosecute her

case by barring her access to the law library and typewriter," and for appointment of

counsel.  *Id.* at 2.  She did not ask the Court for permission to file the necessary papers

late or state that she was attempting to comply with Local and Federal Rules but needed

more time.

On June 23, 2020, Biron signed a cover letter that accompanied an "additional

exhibit" filed in support of her reply.  *Biron v. Sawyer*, Dkt. 65-1 (D. Minn. June 25,

2020).  The letter cited the defendants' opposition, which, as noted above, quoted Local

Rule 15.1(b) when arguing for denial based on her non-compliance with that Rule.  *Id.*

Thus, at least as of June 23, 2020, Biron had the relevant text of Local Rule 15.1 before

her.[20]  *See id.*  But she still did not attempt to file a copy of her proposed amended

---

[20]    It appears that Biron had access to the ELL, and therefore the Local Rules, before
this June 25, 2020 filing as BOP records indicate she accessed the ELL on May 28, 2020;
June 11, 2020; and June 18, 2020.  (Dkt. 56-8, Ex. H at 100, 104, 108 (May 28: 49 min.;
June 11: 50 min.; June 18: 47 min.).)  The Court does not rely on this evidence with
respect to its recommendation for dismissal under Rule 12(b)(6), as the public record in

complaint, nor did she attempt to file a version of the proposed amended complaint that showed how it differed from the operative complaint.  Biron also did not ask the Court to give her time to file a proposed amended complaint and version showing differences— even though she asserted that "the defendants continue to prevent Ms. Biron from accessing the law library and typewriter to draft a proposed Amended Complaint in proper form unless and until this Court issues an order with a deadline."[21]  She apparently chose to rest on the original motion and her arguments regarding access to the law library and typewriter despite her knowledge of the motion's deficiencies and the fact that those deficiencies were the basis for the defendants' opposition.

On August 20, 2020, Biron signed a new motion (docketed on August 26, 2020) in which she sought to substitute official capacity defendants with their successors and to make certain amendments to the complaint, including again seeking to add a claim for

_____

*Biron v. Sawyer* establishes her knowledge of Local Rule 15.1 and the basis for the defendants' opposition at least as of June 23, 2020.

[21]     Biron suggested in her Objections to Judge Brisbois' Order and Report and Recommendation that she asked the Court to set a deadline for her so she could obtain access to the law library. *Biron v. Sawyer*, Dkt. 74 at 8 (D. Minn. Sept. 28, 2020) ("Nor did the Court issue an order with a deadline **as requested by Plaintiff** so she could convince the Defendants to let her use the law library." (emphasis added)).  But despite repeatedly referencing the requirement for a court deadline to obtain access to the ELL, she never asked the Court to set a deadline. *See, e.g.*, *Biron v. Sawyer*, Dkt. 63 at 1 (June 1, 2020) (referencing requirement); Dkt. 64 (email describing requirement of "imminent deadline"); Dkt. 65 at 2 (again referencing requirement and stating she could not obtain access unless the Court issues an order with a deadline).  A request for a court order must be made by motion and state the relief sought.  Fed. R. Civ. P. 7.  It is not enough to reference BOP restrictions in filings that do not clearly identify what relief, if any, a party is seeking.  Thus, to the extent Biron suggests that her motion to amend was denied due to the lack of deadline that would permit her access to the law library, the Court rejects this argument.

damages against Hiller and Barnes in their individual capacities. *See Biron v. Sawyer*, Dkt. 68 (D. Minn. Aug. 26, 2020). The motion was filed with a partially typed and partially handwritten proposed amended complaint and a version showing how the proposed revisions differed from the operative complaint. *See Biron v. Sawyer*, Dkts. 68, 68-1, 68-2 (D. Minn. Aug. 26, 2020). In a cover letter, Biron stated that the August 20 motion was "to supplement" her previously filed motion to amend. *Biron v. Sawyer*, Dkt. 68-3 (D. Minn. Aug. 26, 2020).)

On August 21, 2020, Judge Brisbois denied Biron's May 20 motion to amend for failure to comply with Local Rule 15.1, failure to meet and confer, and on futility grounds. *Biron v. Sawyer*, Dkt. 66 (D. Minn. Aug. 21, 2020).) The Order and Report and Recommendation were docketed on August 21, 2020, before the Clerk's Office received Biron's August 20 motion and supporting papers on August 26, 2020. *Compare Biron v. Sawyer*, Dkt. 66 (D. Minn. Aug. 21, 2020), *with id.*, Dkts. 68, 68-1, 68-2 (D. Minn. Aug. 26, 2020).) On August 22, 2020, Biron sent a letter to the Clerk's Office noting this fact and stating, "I never dreamed Magistrate Brisbois would outright deny my motion to amend knowing that I have been restricted from all access to the law library by the very defendants I am suing, and was, therefore unable to draft and file the proposed First Amended Complaint until now."[22] *Biron v. Sawyer*, Dkt. 69-1 (D. Minn. Aug. 27, 2020).

---

[22]    Biron's August 22, 2020 claim that she had been "restricted from all access to the law library . . . and was, therefore, unable to draft and file the proposed First Amended Complaint until now" appears to be inaccurate, as the ELL records show that she accessed the ELL on May 28, June 11, June 18, June 25, July 2, and July 16, 2020. (Dkt. 56-8, Ex. H at 89, 96 98, 100, 104, 108 (May 28: 49 min.; June 11: 50 min.; June 18: 47 min.; June 25: 52 min.; July 2: 4 min.; July 16: 50 min.).) Again, the Court need not rely on this inconsistency for purposes of its Rule 12(b)(6) analysis.

The letter concluded, "I will be objecting to his report and recommendation, but perhaps he would like to review the complaint, and reconsider."[23]  *Id.*

In sum, Biron had full knowledge of the deficiencies in her May 20 motion to amend, knew what Local Rule 15.1(b) required, and knew the defendants in *Biron v. Sawyer* opposed amendment based on those deficiencies for months before Judge Brisbois denied her motion.  She could have handwritten and filed a version of her proposed amended complaint.  She could have filed a version of the proposed amended complaint showing how it differed from the amended complaint—as she did by handwriting edits on the original complaint when moving to amend again in August.[24]  *See Biron v. Sawyer*, Dkt. 68-2 (D. Minn. Aug. 26, 2020).  No rule requires Biron to use a typewriter or computer to do either; in fact Local Rule 15.1(b) is clear that differences between the proposed and operative pleading can be shown by "redlining, underlining, strikeouts, **or other similarly effective typographic methods**."  D. Minn. LR 15.1(b) (emphasis added).  She could have asked for time to comply with Local Rule 15.1(b).  As Judge Nelson noted, Biron was able at any time to seek "additional time or a stay of

---

[23]    If Biron wanted Judge Brisbois to reconsider his order in view of her August 20 motion or the limits on law library access, she should have sought permission to file a motion for reconsideration pursuant to Local Rule 7.1(j), not suggested that "perhaps [Judge Brisbois] would like to review the complaint, and reconsider" in a letter to the Clerk of Court.  *See* Fed. R. Civ. P. 7(b).

[24]    As Judge Nelson observed, and is true in this case, Biron's "handwritten filings are very legible, well-organized, and cite appropriate legal authority."  *Biron v. Sawyer*, Dkt. 75 at 11 (D. Minn. Sept. 30, 2020).

proceedings due to limited access to the law library and typewriters."[25]  *Biron v. Sawyer*, Dkt. 75 at 10 (D. Minn. Sept. 30, 2020).  She could have sought reconsideration of Judge Brisbois' decision.  But Biron chose to do none of these things.  Instead, she spent her time drafting a new motion that she filed in August 2020.  (Dkts. 68, 68-1, 68-2.)

Biron argues that her allegations are "exactly" what the U.S. Supreme Court in *Lewis* suggested would satisfy the injury requirement.  (Dkt. 69 at 12.)  In particular, she argues: "The Court explained that to show an actual injury, an inmate 'might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.'"  (*Id.* (quoting *Lewis*, 518 U.S. at 351).)  But the point here is that even if her claim in *Biron v. Sawyer* was dismissed for failure to satisfy a technical requirement, that failure was **not** one of which Biron "could not have known" due to "deficiencies in the [law library]."  Biron **did** know of the failure, at least as of May 28, 2020, when she learned of the basis for the defendants' opposition, *see Biron v. Sawyer*, Dkt. 63 (D. Minn. June 1, 2020), and she had the text of the relevant rule at least as of June 23, 2020, *see Biron v. Sawyer*, Dkt. 65-1 (D. Minn. June 25, 2020).  Further, it was not denial of access to the ELL and typewriter in May 2020 that resulted in denial of Biron's motion to amend and the dismissal of *Biron v. Sawyer*,[26] it was her decision to do

---

[25]    Biron sought and was granted more time to file her objections based on her limited access to the law library.  *Biron v. Sawyer*, Dkt. 73 (D. Minn. Sept. 10, 2020).

[26]    Because *Biron v. Sawyer* was dismissed without prejudice, Dkt. 75 at 17 (D. Minn. Sept. 30, 2020), the Court questions the extent to which the denial of leave to amend and dismissal actually prevented Biron from bringing an arguably meritorious and non-frivolous claim based on the underlying facts.  To the extent the dismissal prevents her

nothing to cure the deficiencies in the motion.  *See Surles v. Leach*, No. 12-CV-12403, 2013 WL 5913388, at *17 (E.D. Mich. Oct. 31, 2013) (rejecting reliance on *Lewis* and recommending dismissal of access to courts claim because "even if Plaintiff's transfer to the Mound Correctional Facility caused the May 2011 Complaint to be filed incorrectly, **the matter was ultimately dismissed because Plaintiff failed to properly correct the signing deficiency, not because of Defendants' actions**") (emphasis added), *aff'd* (Sept. 24, 2014).

 In light of these facts, which are found in the judicial records of the case that Biron raised in her Amended Complaint and which are not contrary to the nonconclusory allegations in the Amended Complaint,[27] Biron has failed to plausibly allege that Defendants "ha[ve] not provided an opportunity to litigate a claim . . . , which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying

---

from bringing a frivolous and not arguably meritorious claim, that would not constitute actual injury.  *See White*, 494 F.3d at 680.

[27]    The Court concludes that the court documents, including Biron's filings, in the record of *Biron v. Sawyer* are necessarily embraced by the pleadings and may be considered here under the Rule 12(b)(6) standard.  *See E. Coast Test Prep*, 307 F. Supp. 3d at 969 (citing *Levy*, 477 F.3d at 991) (on motion to dismiss defamation claim based on statements about the litigation, considering discovery requests and previous orders and concluding "[t]hese court documents are necessarily embraced by the pleadings").  Even if all of the filings in *Biron v. Sawyer* were not necessarily embraced by the pleadings and the Court must apply the summary judgment standard in considering them, for the reasons stated in the Court's alternative summary judgment analysis in Section II.B.2.d, Biron has not raised a genuine dispute of material fact regarding an actual injury caused by Defendants' actions, and Defendants are entitled to summary judgment on this access to courts claim.  *See id.* at 970 ("Even if the documents above were not necessarily embraced by the pleadings, there is nothing ATP can present as countervailing evidence, and ATP's claim that the Open Letter implies that ATP is seeking financial information about Allnurses users is blatantly contradicted by the record, so that no reasonable jury could believe it.  Either way, the Open Letter is not defamatory.") (cleaned up).

legal claim." *White*, 494 F.3d at 680.  Biron had the opportunity to litigate her claim and avoid injury by fixing the deficiencies in her motion to amend.  She chose not to.  She has not plausibly alleged that the injury—denial of the motion to amend and dismissal of *Biron v. Sawyer*—resulted from Defendants' conduct (denial of access to the ELL and typewriter) rather than her own.  The Court therefore recommends dismissal of Biron's official capacity access to courts claims.

### b.    Biron's Other Allegations of Prejudice in the Amended Complaint

The remainder of the Amended Complaint makes general allegations of prejudice with regard to various ongoing legal matters but fails to allege any instance where Biron was actually hindered in presenting nonfrivolous and arguably meritorious claims in those legal matters.  For example, Biron claims that Carvajal's and Starr's "failure to timely update the [ELL]," "failure to provide state law resources," and "failure to deliver Plaintiff's mail . . . which contained legal information . . . prejudices [her] litigation." (Dkt. 5 ¶¶ 43-45.)  With respect to mail, Biron alleges that "[i]mportant legal information relevant to Plaintiff's active litigation" was not delivered and that "[f]ailure to deliver important state of N.H. legal information prejudiced Plaintiff in her litigation against FBOP officials at FMC Carswell, Texas."  (*Id.* ¶¶ 31-32.)  With respect to state law resources, Biron alleges that the absence of state law resources "has prejudiced Plaintiff in matters of state family law; state attorney discipline law, and state tort law which informs all claims and statutes of limitations under the Federal Tort Claims Act," and "many federal convictions and sentences are based on prior state convictions, and without access to the relevant state's law, post conviction petitions cannot be filed."  (*Id.* ¶ 29.)

And with respect to ELL updates, Biron alleges that updates "only" four times per year "prejudic[es] Plaintiff's ability to litigate her active civil and criminal cases."  (*Id.* ¶ 30.) Finally, Biron claims that Defendants' "failure to [allow or ensure] Plaintiff meaningful, adequate, or reasonable access to the law library and typewriter . . . prejudices Plaintiff's litigation."  (*Id.* ¶¶ 40-42.)

These claims are entirely nonspecific and conclusory as to injury because the nature of the prejudice is not alleged.  Biron alleges that she has ongoing litigation, in various courts and of various kinds, but does not identify any aspects of her cases that were frustrated or impeded by Defendants' conduct with respect to the ELL, limiting access to a typewriter, or Biron's mail.  (*See id.* ¶¶ 9-12, 29-32, 40-42.)  All of her allegations of prejudice amount to only "labels and conclusions," *Twombly*, 550 U.S. at 555, and do not allege "that a nonfrivolous [sic] legal claim had been frustrated or was being impeded," *White*, 494 F.3d at 680 (cleaned up).  *See Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008) ("The district court thus properly noted Hartsfield failed to allege he was actually prevented from filing a complaint, or a filed complaint was dismissed for lack of legal adequacy. . . .  Therefore, Hartsfield's claim that any complaint he would have filed would have been insufficient is speculative, and the district court properly dismissed this claim."); *Kind v. Frank*, 329 F.3d 979, 981 (8th Cir. 2003) (citing *Lewis*, 518 U.S. 343) ("Kind asserts he was denied his constitutional right of access to the courts because the jail interfered with his mail, prevented him from accessing certain legal materials, and denied him sufficient amounts of writing paper. . . . There is nothing in the record to show Kind lost a specific claim in any legal proceeding

as a result of the jail's alleged interference."); *Sorenson v. Minn. Dep't of Hum. Servs.*,

No. 20-CV-501 (NEB/LIB), 2020 WL 7481756, at *15 n.16 (D. Minn. Nov. 13, 2020)

(even if plaintiff had standing to assert access to the courts claim, he "merely asserts in a

conclusory manner that the proposed claims could not be brought due to the actions of

Defendants," which "are merely legal conclusions couched as factual allegations, which

the Court is not bound to accept them as true," and therefore plaintiff "failed to plausibly

allege that he, or anyone else, was actually prevented from accessing the courts"), *R.&R.*

*adopted*, 2020 WL 7425233 (D. Minn. Dec. 18, 2020); *Blair-Hanson v. Johnson*, No. 19-

CV-2195 (NEB/TNL), 2020 WL 6121269, at *7 (D. Minn. May 22, 2020) (plaintiff

failed to state a claim where he "alleged a single instance of his legal mail being opened

outside of his presence without more" and did not "articulate[] how the opening of this

piece of legal mail resulted in actual prejudice" or plead "facts from which it could

reasonably be inferred that such prejudice even occurred"), *R.&R. adopted*, 2020 WL

5105775 (D. Minn. Aug. 31, 2020).[28]

---

[28]    Although Defendants set forth the standard for dismissal under Federal Rule of
Civil Procedure 12(b)(6) (Dkt. 55 at 12) and argue in a section heading in their brief that
the claim is "not plausible" (*id.* at 15), Defendants also rely on jurisdictional arguments
more appropriate to a motion under Rule 12(b)(1). (*Id.* at 17 ("As a jurisdictional issue,
she has not properly alleged an actual injury.).)  Some cases addressing injury in prisoner
access to courts claims analyze the question as one of standing.  *See, e.g.*, *White*, 494
F.3d at 680 ("Because the actual injury requirement concerns the prisoner's standing to
bring a claim, and thus our jurisdiction, . . . we will first consider whether White suffered
any actual injury."); *Sorenson*, 2020 WL 7481756, at *15 ("Plaintiff has failed to
demonstrate that Defendants' actions resulted in any actual harm or injury to Plaintiff's
own right to access the courts, hence Plaintiff lacks standing to bring his purported access
to the courts claim.").  Here, the Court views Biron's claims as alleging injury too
generally and insufficiently, rendering analysis under Rule 12(b)(6) is more appropriate.
In the alternative, the Court recommends dismissal for lack of jurisdiction due to lack of

Moreover, to the extent that Biron alleges prejudice with respect to "family law litigation" or "attorney discipline matters" (Dkt. 5 ¶ 12; *see also id.* ¶ 29)—or anything other than litigation regarding her conviction or conditions of confinement—such an injury is not within the scope of a prisoner's right of access to the courts. *See Lewis*, 518 U.S. at 354-55 ("[T]he injury requirement is not satisfied by just any type of frustrated legal claim. . . . *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything . . . . The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."); *Larson v. Lake*, No. 17-CV-3551 (NEB/ECW), 2019 WL 5150832, at *7 (D. Minn. June 10, 2019) ("Plaintiffs have failed to present any evidence that an actionable claim related to their sentences or conditions of confinement which they desired to bring has been lost or rejected. Although Larson stated that he is a pro se defendant and plaintiff in three other state cases, he did not state—or point to any evidence suggesting—that the cases challenge his sentence or conditions of confinement, nor that he was harmed in any way by the allegedly inadequate resources at the law library.") (cleaned up), *R.&R. adopted as modified sub nom. Larson v. Carlton Cnty. Jail*, 2019 WL 4187839 (D. Minn. Sept. 4, 2019), *aff'd*, 810 F. App'x 489 (8th Cir. 2020).

---

standing insofar as her allegations are too general to constitute an allegation of injury at all.

### c.    Biron's Allegations of Prejudice in Other Filings

Finally, the Court addresses Biron's allegations of prejudice in filings other than the Amended Complaint.  For example, in her response to the Motion to Dismiss, Biron offers some more detail about her need for state law information, stating she needed access to but could not timely access "N.H. R.S.A. 169:c et seq.," and asserting, "The lack of access prejudiced her because the N.H. statute proved that arguments that [an Assistant U.S. Attorney] was making in litigation were based on confidential documents and information from a N.H. juvenile case," and, "If Biron had timely access to this law she could have shut down [the attorney's] improper use of this information that prejudiced her in two cases in Texas (one still ongoing) and violated N.H. law."  (Dkt. 69 at 17-18.)  Biron admits that these facts are "not spelled out in this level of detail in her Complaint" but contends that she has nonetheless "clearly stated a claim."  (*Id.* at 18.) These allegations do not demonstrate the requisite prejudice to overcome a motion to dismiss for at least two reasons.

First, as set forth in Section II.A, on a motion to dismiss, the Court only considers the allegations in the operative complaint and materials necessarily embraced by the operative complaint.  The Court therefore need not consider these assertions at all, as they were not alleged in Biron's Amended Complaint.  *See Thomas v. United Steelworkers Loc*. 1938, 743 F.3d 1134, 1140 (8th Cir. 2014)

Second, even if the Court considered Biron's assertions in her Response, she has not sufficiently identified any injury in those filings.  With respect to the New Hampshire statutes, Defendants argue that "the Court is left to guess which case was affected, what

the prejudice was, what the likely outcome would have been, or when it happened."
(Dkt. 72.)  The Court agrees.  Biron generally references "N.H. R.S.A. 169-c et seq.,"
which is the New Hampshire Child Protection Act, and claims her lack of access to this
Act "prejudiced her litigation against FBOP officials at FMC Carswell, Tx."  (Dkt. 69 at
16.)  But she did not identify which portion of the Act she believed was violated by the
Assistant U.S. Attorney in the Texas litigation or which of her Texas lawsuits was
affected, much less set forth a non-frivolous legal theory for how a violation of a New
Hampshire statute would affect her legal claim against the BOP.  And while Biron
continues to assert that she needs access to the ELL and a typewriter due to the number of
lawsuits she is pursuing (*see, e.g.*, Dkt. 25 ¶¶ 5-11 (detailing status of other litigation and
Biron's legal work); Dkt. 60 at 1-2 & n.2 (same)), she fails to identify any instance where
she was unable to pursue nonfrivolous legal claim in any of those matters.  In sum, even
if the Court considered Biron's assertions of prejudice made outside of the Amended
Complaint, they still do not "demonstrate that a nonfrivolous [sic] legal claim had been
frustrated or was being impeded," *White*, 494 F.3d at 680 (cleaned up).

    For all the foregoing reasons, the Court recommends that the Defendants' Motion
to Dismiss be granted as to Biron's official capacity access to courts claims.  (*See* Dkt. 5
¶¶ 40-45.)

### d.    Alternative Summary Judgment Analysis

    Defendants move in the alternative for summary judgment on all claims.  (Dkt.
52.)  Having recommended dismissal of Biron's official capacity access to courts claims

for the reasons stated above in Sections II.B.2.a-c, the Court alternatively recommends granting summary judgment to Defendants on these claims.

As noted in Section II.A, if a court considers matters outside the pleadings in addressing a motion to dismiss, Rule 12 requires application of the Rule 56 summary judgment standard instead of the 12(b)(6) standard. Fed. R. Civ. P. 12(d). Rule 12(d) further requires that parties "be given a reasonable opportunity to present all the material that is pertinent to the motion" when a court treats a motion to dismiss as one for summary judgment. However, explicit or affirmative notice of the possibility of conversion to a summary judgment framework is not required. *Barron ex rel. D.B. v. S.D. Bd. of Regents*, 655 F.3d 787, 792 (8th Cir. 2011). "'[P]arties have constructive notice that the court will treat the motion as one for summary judgment when the moving party states that it is moving for summary judgment and the parties submit and refer to materials outside the complaint." *Machen v. Iverson*, No. CIV. 11-1557 DWF/JSM, 2012 WL 566977, at *12 (D. Minn. Jan. 23, 2012) (quoting *Riehm v. Engelking*, 538 F.3d 952, 962 (8th Cir. 2008)), *R.&R. adopted*, 2012 WL 567128 (D. Minn. Feb. 21, 2012). "At the same time, in the case involving a *pro se* party, the Court must proceed with caution in converting a motion to dismiss to a motion for summary judgment. *Id.* (citing *Beacon Enter., Inc. v. Menzies*, 715 F.2d 757, 767 (2d Cir. 1983)).

Here, Biron had constructive notice that the Motion to Dismiss would be treated as one for summary judgment and had a reasonable opportunity to respond and present all pertinent material. Defendants (1) explicitly moved in the alternative for summary judgment (Dkt. 52) and (2) in their opening brief, presented a separate factual

background in support of the motion for summary judgment that addressed ELL access, typewriter access, and mail procedures and relied on the Kallis declaration and exhibits (Dkt. 55 at 5-101); set forth the summary judgment standard (*id.* at 29-30); and argued specifically that they were entitled to summary judgment regarding claims related to FCI-Waseca's mail policy (*id.* at 30-33). Biron, in response, also set forth the summary judgment standard (Dkt. 69 at 1-2), raised arguments addressing the Kallis declaration (*id.* at 2-7), and relied on material outside the pleadings (*id.* at 3-6 (citing Dkt. 70 (Biron Decl.) and Dkt. 60 (Biron Reply Mot. Prelim. Inj.))). Considering all of these circumstances, the Court concludes that Biron had adequate notice and opportunity to respond and conducts a Rule 56 analysis in the alternative. *See Pinson v. Hadaway*, No. 18-CV-3420-NEB-KMM, 2020 WL 6121357, at *4 (D. Minn. July 13, 2020) (finding that notice was adequate where defendants explicitly stated they were submitting materials outside the pleadings and, if such materials were considered, court would be required to convert motion to one for summary judgment, defendants defined and made arguments using the summary judgment standard, and pro se plaintiff also submitted materials outside the pleadings), *R.&R. adopted*, 2020 WL 5543749 (D. Minn. Sept. 16, 2020).

Regarding Biron's allegations that Defendants' actions related to law library and typewriter access resulted in Biron's failure to follow court rules, and because of that failure, her motion to amend her complaint in *Biron v. Sawyer* was denied (Dkt. 5 ¶¶ 15-18, 40-42), Biron has not identified any dispute of material fact for trial that would preclude summary judgment. Biron presented no evidence from which a reasonable juror

could conclude that Defendants' actions, rather than her own failure to cure the

deficiencies in her motion to amend, resulted in denial of that motion.  *See Larson*, 2019

WL 5150832, at *7 ("Plaintiffs have failed to present any evidence that an actionable

claim related to their sentences or conditions of confinement which they desired to bring

has been lost or rejected. . . .  [T]here is no evidence that Plaintiffs' claim was frustrated

or impeded by the alleged inadequacies in the law library.  Indeed, Plaintiffs filed

[complaints] setting forth their allegations along with several motions, briefs, and

affidavits.  Plaintiffs have not identified any lost or rejected claims or a claim that was or

is being prevented by the allegedly inadequate law library.  Thus, there is no genuine

dispute of material fact that Plaintiffs have not suffered an actual injury, as required in an

access to courts claim.") (cleaned up).

Rather than presenting any evidence relating to injury or causation, Biron argues

that the Kallis declaration "contains indisputably false statements that call into question

the veracity of the entire declaration," specifically that "the false premises in paragraphs

12 and 19 of Kallis' declaration negate the entirety of defendants' rationale for not

activating the [ELL] on the housing units sooner."  (Dkt. 69 at 2 (citing Dkt. 56).)  In

other words, she presented evidence directed to how the TRULINCS terminals function

and Defendants' rationale for limiting access to the ELL and typewriter during the

pandemic.  Even if the Court accepts Biron's evidence as true, it would not alter the

Court's conclusion as to summary judgment, as both are irrelevant to the question of

whose conduct resulted in denial of the motion to amend in *Biron v. Sawyer*.  This alone

justifies summary judgment, as "a complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial."

*Celotex*, 477 U.S. at 323.  Moreover, Biron's evidence as to function and rationale does

not rebut Defendants' evidence showing Biron used the ELL (and thus was able to access

the Local Rules) in May, June, and July 2020, after she filed her motion to amend and

weeks before her motion was denied.  (*See* Dkt. 56, Ex. H at 89-108; *supra* nn.20, 22.)

Indeed, Biron does not dispute the accuracy of the ELL records, which were filed with

Defendants' opening brief.  For all of these reasons, the Court recommends summary

judgment on Biron's access to courts claim to the extent it is based on denial of the

motion to amend in *Biron v. Sawyer*.[29]

The Court considers Biron's claims to the extent they are based on how

Defendants' actions related to ELL and typewriter access, ELL updates and content, and

mail delivery resulted in prejudice with regard to other ongoing legal matters.  (Dkt. 5

¶¶ 9-12, 19-31, 40-45.)  Biron has had ample opportunity to submit evidence

demonstrating she was actually hindered in presenting nonfrivolous and arguably

meritorious claims in those legal matters, including by identifying the specific injury in a

---

[29] Biron argues that "[i]f the defendants do not concede the above-discussed points
[about the alleged false statements in Kallis' declaration], . . . limited discovery should be
allowed."  (Dkt. 69 at 5.)  Since the facts into which Biron proposes to conduct discovery
are not directed at the missing essential element of actual injury caused by Defendants,
this argument is unavailing.  With respect to actual injury, Biron has not filed a Rule
56(d) affidavit showing that she cannot present facts essential to justify her opposition,
sought discovery, or offered any evidence to explain why she did not attempt to cure the
deficiencies in her motion to amend in *Biron v. Sawyer* or ask for more time to do so.
"Simply put, Plaintiff has done *nothing* to convince this court that [summary judgment as
to the access to courts claims] is not appropriate at this time."  *Schiffler v. Home Depot
USA, Inc.*, No. CIV. 07-4303 JRT/LIB, 2013 WL 980334, at *8 (D. Minn. Feb. 15,
2013), *R.&R. adopted*, 2013 WL 980330 (D. Minn. Mar. 13, 2013).

specific case in an affidavit. She failed to do so. "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) (citing *Celotex*, 477 U.S. at 324); *see also Jackson v. Mike-Lopez*, No. CV 17-4278 (JRT/BRT), 2020 WL 736682, at *9 (D. Minn. Jan. 27, 2020) ("In deciding a summary-judgment motion, a court need not accept a nonmoving party's unsupported allegations, conclusory statements, or other statements that are blatantly contradicted by the record, such that no reasonable jury could believe them.") (cleaned up) (citing and quoting Eighth Circuit cases), *R.&R. adopted sub nom. Jackson v. Lopez*, 2020 WL 733048 (D. Minn. Feb. 13, 2020). Instead, Biron disputes the veracity of Kallis' description of how TRULINCS terminals function and FCI-Waseca's mailroom procedures. (*See* Dkt. 69 at 4-5.) Any dispute of fact on those points does not preclude entry of summary judgment because it is irrelevant to the question of actual injury with respect to her ongoing legal matters. *See Celotex*, 477 U.S. at 323 (complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial).

In sum, considering the facts presented in conjunction with Defendants' alternative motion for summary judgment, Biron has failed to raise a genuine dispute that Defendants "ha[ve] not provided an opportunity to litigate a claim . . . , which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *White*, 494 F.3d at 680.

**C.     Individual Capacity Access to Courts Claim Against Hiller**

Biron asserts claims against Hiller in her individual capacity and specifically alleges that Hiller, during the COVID-19 pandemic when inmate movement was severely restricted, denied Biron's request to use the ELL and typewriter in May 2020 and then again later ("when she received the Report and Recommendation"), as well as Biron's request for a typewriter in September 2020.  (Dkt. 5 ¶¶ 5, 13, 15-17, 19-20, 26-27.) Defendants argue that "[t]o the extent Biron asserts claims against Defendant Hiller in her individual capacity, the claims are not cognizable under *Bivens*, and Hiller is entitled to the complete defense of qualified immunity."  (Dkt. 55 at 11; *see also id.* at 22-29.)

As explained in Section II.B, the Court concludes that Biron has failed to state an access to courts claim against Defendants in their official capacities and, alternatively, that summary judgment should be granted for Defendants on the official capacity claims. The same reasoning applies to Hiller in her individual capacity.  Further, even if Biron had stated an access to courts claim, the Court concludes that qualified immunity would bar her claim against Hiller.

Here, the Court assumes without deciding that Biron's access to court claim is cognizable under *Bivens* and proceeds to address the issue of qualified immunity.  *See Wood v. Moss*, 572 U.S. 744, 757, 764 (2014) (assuming without deciding that *Bivens* extends to First Amendment claims and holding agents were entitled to qualified immunity); *Farah v. Weyker*, 926 F.3d 492, 503 (8th Cir. 2019) ("Even if we assume that Yassin's unlawful-arrest claim is viable under *Bivens*, however, Weyker still claims that she is entitled to qualified immunity . . . .  So we must address the two familiar qualified-

immunity questions: assuming Yassin's allegations are true, did Weyker violate her constitutional rights?  And if so, were those rights clearly established?") (cleaned up).

### 1.    Legal Standard for Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Wood*, 572 U.S. at 757 (cleaned up); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866-67 (2017) (discussing qualified immunity and citing cases); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").  "[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity 'must show that they are entitled to qualified immunity on the face of the complaint.'"  *Carter v. Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016) (quoting *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005)).  The pleading standard under *Iqbal* and *Twombly* (*see supra* Section II.A) applies. *Wood*, 572 U.S. at 757-58.[30]

---

[30]    Defendants present this issue as one of jurisdiction under Rule 12(b)(1), though they do not appear to cite any authority holding that this is the correct standard.  (*See* Dkt. 55 at 22-23.)  As another court in this District recently observed, "A district court within the Eighth Circuit considered this question, and its 'independent review of the relevant case law demonstrates that courts within the Eighth Circuit do not treat qualified immunity as a subject-matter jurisdiction issue, but rather as a Rule 12(b)(6) issue.'" *Braun v. Walz*, No. CV 20-333 (DSD/BRT), 2021 WL 268321, at *11 (D. Minn. Jan. 27, 2021) (quoting *Rohlfing v. City of St. Charles*, No. 12-CV-1670 (SPM), 2013 WL

### 2.    Analysis of Individual Capacity Access to Courts Claim Against Hiller

The Court concluded in Section II.B that Biron has failed to plausibly allege an access to courts claim, or alternatively that summary judgment should be granted for Defendants, because (1) the specific instance of injury alleged—denial of the motion to amend in *Biron v. Sawyer*—resulted from Biron's conduct, not Defendants' denial of an opportunity to litigate that claim, and (2) she has not alleged any other prejudice as to a non-frivolous and arguably meritorious claim relating to her sentence or conditions of confinement.  *See White*, 494 F.3d at 680.  Consequently, Biron has not plausibly alleged a violation of a statutory or constitutional right and thus has not met the first prong of *Wood*.  *See West v. Whitehead*, No. CIV 06-4193, 2008 WL 895937, at *3 (D.S.D. Mar. 31, 2008) ("The allegations and undisputed facts establish no constitutional violation with regard to the access to the courts claim and the defendants are entitled to qualified immunity and dismissal of this claim also.") (granting Rule 12(b)(6) motion).

Even if Biron's allegations were enough to allege a violation of a constitutional right, the Court further concludes that any such right as asserted by Biron was not "clearly established."  The U.S. Supreme Court has defined this requirement as follows:

> "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful.  In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate."  This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law."

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent.  The rule must be "settled law," which

---

1789269, at *2 (E.D. Mo. Apr. 26, 2013)), *R.&R. adopted*, 2021 WL 1171693 (D. Minn. Mar. 29, 2021).

means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority.'" It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that "every reasonable official" would know.

The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." This requires a high "degree of specificity." We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established."

*D.C. v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (citations omitted).

The Court concludes that Biron's allegations do not preclude application of qualified immunity because they do not identify any controlling authority or show a robust consensus of cases of persuasive authority that would clearly prohibit Hiller's conduct under the particular circumstances of this case. This case involves prison operations in the midst of a novel coronavirus pandemic that, as Biron herself alleges, is the reason why the BOP and FCI-Waseca implemented restrictions on inmate activities and movement, including access to the ELL and typewriters. Biron has not identified any authority indicating that prison officials cannot implement restrictions along the lines of those implemented at FCI-Waseca—which still permitted some access to the ELL and permitted inmates to pursue their cases using handwritten materials. The only authorities she cites—*Bounds* and *Lewis*—provide no more than the general principle that, as Biron states," [t]he right of inmate access to the courts is well-established." (Dkt. 69 at 29-30.)

This is not specific enough.  The question is not whether the general right of inmate access to the courts was well-established, the question is whether every reasonable official in Hiller's "particular circumstances"—that is, a pandemic involving a previously unknown virus—"would understand that what [they are] doing"—restricting inmate activity and movement in an effort to prevent the spread of that virus—"is unlawful." *See D.C. v. Wesby*, 138 S. Ct. at 589-90 (cleaned up).  Biron cites no authority that comes close to establishing as much.

Accordingly, the Court concludes that to the extent Biron has stated individual capacity claims against Hiller, Hiller is entitled to qualified immunity.  There was no right to access a law library and a typewriter, with the level of access, timely updates, and resources that Biron contends the law library ought to have, that was clearly established at the time of the challenged conduct.[31]

## D.   Claims for Violation of Regulations

Biron's Amended Complaint includes allegations that "Defendants' failure to allow reasonable access to an adequate law library," "failure to provide access to a typewriter to prepare legal documents," and "ad hoc policy and practice of returning

---

[31]   The Court notes that Biron at times seems to base her claims on the motivations of Defendants.  (*See, e.g.*, Dkt. 69 at 24 ("Defendant Hiller and her cohorts denied Ms. Biron sufficient access not because other inmates had requested access, or because it could not be done safely, but because they disagreed with Ms. Biron's litigation strategy."); *id.* at 30 ("Hiller did not deny access because of health and safety, but because she, in her expert legal opinion, did not feel Ms. Biron's motion to amend was a necessary step in the litigation . . . .").)  Even if these allegations were in the Amended Complaint (and they are not), Biron has not alleged (or identified) any factual content that would allow the Court to find such allegations plausible, and they are not entitled to weight on a Rule 12(b)(6) motion.  *See Iqbal*, 556 U.S. at 662.

incoming inmate mail to the post office unopened because of the exterior appearance of the envelope violates the FBOP's established regulations." (Dkt. 5 ¶¶ 48-50.) Although the nature of these claims (or their legal basis) is unclear from the Amended Complaint, the allegations quote several regulations regarding legal materials and preparing legal documents (Dkt. 5 ¶¶ 33-35 (quoting portions of 28 C.F.R. §§ 543.10, 543.11 (appears to quote 543.11(a)), 543.11(h)) and mail procedures (*id.* ¶¶ 36-37 (quoting portions of 28 C.F.R. §§ 540.12, 540.14)). She alleges that the ELL "is inadequate under the Constitution and federal regulations" based on several alleged deficiencies. (*Id.* ¶¶ 29-30.) And in her claims, Biron invokes the Administrative Procedure Act ("APA") when she states that the BOP's "Central Office's response condoning Defendants' failure to provide reasonable access to an adequate law library and typewriter" and "to open and inspect all general correspondence and condoning the return of unopened mail to the post office because of the exterior appearance of the envelope" both "constitute[] final agency action pursuant to 5 U.S.C. § 704." (*Id.* ¶¶ 46-47.)

To the extent Biron bases constitutional claims on alleged violations of BOP policies, or regulations, those claims would fail. "'[T]here is no federal constitutional liberty interest in having . . . prison officials follow prison regulations.'" *Hernandez-Pacheco v. Fisher*, No. CIV. 10-2088 JRT/TNL, 2011 WL 4929417, at *7 (D. Minn. Sept. 12, 2011) (quoting *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003)), *R.&R. adopted*, 2011 WL 4808187 (D. Minn. Oct. 11, 2011); *see also Jackson v. Gutzmer*, No. CV 16-3831 (JRT/BRT), 2019 WL 952182, at *6 (D. Minn. Feb. 27, 2019) ("'[A] violation of prison regulations in itself does not give rise to a constitutional violation.'")

(quoting *Bonner v. Fed. Bureau of Prisons*, 196 F. App'x 447, 448 (8th Cir. 2006)), *aff'd*, 784 F. App'x 472 (8th Cir. 2019). To the extent Biron bases any constitutional claim on violations of BOP regulations or policies, the Court recommends their dismissal.[32]

However, Biron, in her response to the Motion to Dismiss, stated that these are *Accardi* claims, brought under the APA, challenging the BOP's failure to follow their own regulations. (Dkt. 69 at 7-9.) Defendants argue that Biron has failed to state an *Accardi* claim, because she "failed to demonstrate how FCI Waseca's policies . . . violate any governing regulation." (Dkt. 72 at 4; *see also id* ("Biron failed to explain how FCI Waseca violated those regulations, which each allow for variation and flexibility. . . . [M]erely identifying applicable regulations (which themselves provide for broad authority) is not the same as stating a valid claim.").)[33]

---

[32] Defendants initially argued, in the alternative, that summary judgment was appropriate as to Biron's claims related to the mail policy—understood as alleging that the policy interfered with Biron's right of access to the courts—because the "policy passes constitutional muster under *Turner v. Safely*." (Dkt. 55 at 30-31 (citing 482 U.S. 78, 89-90 (1987)); *see also id.* at 33 ("FCI Waseca's mail policy, which requires general correspondence to be communicated on white paper and addressed in ink or by stamp, places a minimal burden on inmate correspondence and does not violate Biron's constitutional rights under a *Turner* analysis.").) Given Biron's response, which does not conduct a *Turner* analysis and instead characterizes her claims related to regulations as *Accardi* claims, i.e., claims for violations of regulations, not claims that the regulations impinge on her constitutional rights, the Court need not address Defendants' argument under *Turner*.

[33] Biron argues that Defendants "failed to acknowledge and have, therefore, forfeited any affirmative defense to Ms. Biron's claims that they have violated their own agency regulations regarding inmate legal activities and incoming general correspondence." (Dkt. 69 at 7-8 (citations omitted).) The Court finds that the general references to "final agency action pursuant to 5 U.S.C. § 704" and violations of "FBOP's established regulations" did not sufficiently put Defendants on notice that Biron was making *Accardi* claims such that the Court would find Defendants forfeited any defense to those claims. As Defendants noted, Biron only identified her claims as *Accardi* claims in her response

1.    **Legal Standard for *Accardi* Claims**

A case from the District of Columbia recently summarized "the *Accardi* doctrine"

as follows:

> This doctrine arises from a 1954 Supreme Court decision, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), in which the Court vacated a deportation order because it was issued without procedures that conformed to the relevant agency regulations.  The Court stated that "[r]egulations with the force and effect of law supplement the bare bones" of federal statutes, and that, even in areas of expansive discretion, agencies must follow their own "existing valid regulations." *Id.* at 266, 268.  Two decades later, in *Morton v. Ruiz*, 415 U.S. 199, 232 (1974), the Supreme Court returned to the doctrine—this time striking down a Bureau of Indian Affairs benefits determination because it did not comply with the procedures set forth in the agency's internal manual.  In doing so, the Court noted that *Accardi*'s teachings apply with particular force in those cases in which "the rights of individuals are affected," stating that "it is incumbent upon agencies to follow their own procedures . . . even where [they] are possibly more rigorous than otherwise would be required." *Id.* at 235.
>
> This Circuit and district courts here have subsequently invoked the doctrine, noting that "*Accardi* has come to stand for the proposition that agencies may not violate their own rules and regulations to the prejudice of others."

*Damus v. Nielsen*, 313 F. Supp. 3d 317, 335-36 (D.D.C. 2018) (some citations omitted);

*accord Spencer v. Rios*, No. 18-CV-2639 (MJD/TNL), 2019 WL 9313598, at *5 (D.

Minn. Apr. 23, 2019) ("The requirement that an agency be barred from taking action

inconsistent with its internal regulations when doing so would affect individuals rights

has been referred to by some courts as the *Accardi* doctrine."), *R.&R. adopted*, (D. Minn.

June 5, 2019); *Wood v. Smith*, No. 2:17-CV-137-JLH-BD, 2018 WL 1613799, at *3

(E.D. Ark. Mar. 12, 2018) (quoting *In re U.S.*, 197 F.3d 310, 315 (8th Cir. 1999), and

---

brief (*see* Dkt. 72 at 3 n.1), and the same is true of her contention that the APA provides an avenue for "aggrieved parties a cause of action to enforce compliance" (Dkt. 69 at 8 (cleaned up)).

*Accardi*, 347 U.S. at 265) ("'[T]he *Accardi* case has come to stand for the proposition that administrative agencies may not take action inconsistent with their internal regulations when it would affect individual rights.'  If an agency fails to follow . . . its own procedures and regulations, that agency's actions are generally invalid. 'The crucial question is whether the alleged conduct . . . deprived petitioner of any of the rights guaranteed him by the statute or by the regulations issued pursuant thereto.'"), *R.&R. adopted*, (E.D. Ark. Apr. 3, 2018).

### 2.    Analysis of *Accardi* Claims

Case law interpreting and applying the *Accardi* doctrine in the Eighth Circuit and this District, especially in contexts similar to those here, is not robust.  Based on its review of case law, including from other jurisdictions, the Court first notes two general concerns about the application of *Accardi* to this case.  First, Biron's failure to adequately allege an actual injury likely is fatal to her *Accardi* claims, just as it is fatal to her constitutional access to courts claims.  One court in the Southern District of West Virginia, where the plaintiff invoked the *Accardi* doctrine, found that "Plaintiff's assertions [regarding violation of a BOP policy relating to retention of attorneys] are insufficient to demonstrate that he has suffered an actual injury," and "[t]he assertions are grounded in speculation and are not borne out by any evidentiary support."  *Woltz v. Scarantino*, No. 5:10-CV-00095, 2011 WL 1229994, at *6-7 (S.D. W. Va. Mar. 31, 2011), *aff'd*, 475 F. App'x 882 (4th Cir. 2012); *see id* at *6 n.5 ("Plaintiff refers to the principle established in [*Accardi*].  The *Accardi* doctrine, has been applied in a variety of contexts including the review of the BOP's regulation regarding forcibly medicating

pretrial detainee. However, given Plaintiff's inability to show an actual injury or that he suffered prejudice by the Defendants' alleged impediment to his access of courts or that he has asserted a claim upon which relief may be granted, this Court finds Plaintiff's assertion immaterial.") (citations omitted); *see also Spencer*, 2019 WL 9313598, at *5 (in habeas case, noting that "in the prison disciplinary context, even when a regulation is clearly designed to protect an inmate's due process right, relief is warranted only when the inmate shows prejudice to his rights," and "consider[ing] whether Petitioner has suffered prejudice from BOP staff's failure to provide him a staff representative").

Second, to the extent any regulations at issue here create substantive rights for prisoners, it is not clear that *Accardi* should be applied to such rights, as *Accardi* itself, and many cases applying it, involve procedural, not substantive, requirements. *See C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 226-27 (D.D.C. 2020) (discussing, *inter alia*, *Damus*, 313 F. Supp. 3d at 336-37) ("[I]t is far from clear that [ICE's COVID-19 Pandemic Response Requirement ("PRR")] are the type of rules or regulations that can be enforced through the *Accardi* doctrine. Plaintiffs contend that ICE is in violation of the Fifth Amendment Due Process Clause by depriving detainees the rights guaranteed under the COVID-19 regulations enacted by ICE. But agency regulations do not create *substantive* due process rights. *Accardi* is rooted instead in notions of *procedural* due process. . . . It is not readily apparent that the PRR, which provide substantive guidelines on how ICE should operate its detention facilities, falls within the ambit of those agency actions to which the *Accardi* doctrine may attach.") (cleaned up).

70

In any event, the Court need not decide the above questions, because the Court concludes that Biron has failed to state a claim with respect to the violations of BOP regulations. Even with the further explanation of her claims in her response brief, Biron's claims fail to meet the standards of *Iqbal* and *Twombly*. She claims that "established regulations" have been violated (Dkt. 5 ¶¶ 48-49) and quotes certain regulations in her allegations (*id.* ¶¶ 33-37), but she does not identify which regulations are violated. For example, Biron asserts that "Defendants' ELL is inadequate under the Constitution and Federal Code of Regulations because legal resources are updated only four (4) times per year prejudicing Plaintiff's ability to litigate her active civil and criminal cases. The database is electronic and should be updated at least weekly." (Dkt. 5 ¶ 30.) But she cites no regulation requiring updating of the ELL at least weekly or specifying any particular timeline for updating an electronic law library. While Biron does quote certain regulations (*id.* ¶¶ 34-36), it is unclear whether she alleges that they have been violated (and if so, how) or if she is quoting them for context. Other claims of regulatory violations, namely general failures to provide access to law library resources and returning mail because of the exterior appearance violate regulations, are only conclusory. (*See id.* ¶¶ 48-50.)

These deficiencies become even more apparent when the regulations that Biron does identify are examined. Several of them contain discretionary, flexible language, such as: the warden's responsibility regarding affording inmates access to legal materials and opportunity preparing documents is that it must be "reasonable," 28 C.F.R. § 543.10; various aspects of the warden's responsibility regarding the law library and preparation of

legal documents must be done only where or whenever "practical," be "reasonable," or occur "ordinarily," § 543.11(a); typewriter availability is not required if "clearly impractical," § 543.11(h); a warden "shall establish and exercise controls [for inmate correspondence] to protect individuals, and the security, discipline, and good order of the institution," and that "flexibility in correspondence procedures" is required based on "[t]he size, complexity, and security level of the institution, the degree of sophistication of the inmates confined, and other variables," § 540.12, and a warden "may reject correspondence sent by or to an inmate," § 540.14(d).  None of these regulations guarantee a particular level of access to law libraries or typewriters, much less support Biron's allegation that weekly updates are required for electronic databases or prohibit the conduct complained of by Biron.  Rather, they indicate that the warden has discretion in the provision of such facilities.  Given this discretionary language and Biron's failure to allege which regulation is violated by what conduct, the Court concludes that she has not plausibly alleged any *Accardi* claim with respect to these regulations.

In sum, Biron has failed to state an *Accardi* claim because she has not alleged which regulations are being violated by what conduct, and the regulations she cites do not guarantee any particular rights to Biron.  *See Wood v. Smith*, 2018 WL 1613799, at *3 ("Mr. Wood cites various federal regulations to support [his claim that the defendants' acts and omissions violated the *Accardi* doctrine, cognizable under the Due Process Clause of the Fifth Amendment], in both his complaint and his response to the Defendants' motion.  None of the regulations cited, however, guarantee any particular right.  This omission is fatal to Mr. Wood's claim, and he should not be allowed to

proceed on his substantive due process claim under [*Bivens*].") (footnotes and citations omitted). She also has failed to allege any actual injury resulted from the alleged violations, and it is questionable whether *Accardi* even applies to the regulations she cited. Accordingly, the Court recommends dismissal of Biron's *Accardi* claims, i.e., her claims for violations of BOP regulations. (*See* Dkt. 5 ¶¶ 48-50.)

### III.    PLAINTIFF'S REQUEST FOR EXPEDITED PRELIMINARY INJUNCTIVE RELIEF (DKT. 22)

Biron's Motion for Preliminary Injunction requests that the Court order that "[the ELL] remain activated on Plaintiff's housing unit, and be updated weekly with new case law," and "Defendants provide access to a typewriter to prepare documents related to this case, her criminal case, other active cases, and future cases as required under [certain regulations]." (Dkt. 22.)

### A.    Legal Standard for a Preliminary Injunction

In the Eighth Circuit, courts assess preliminary injunction requests by weighing the *Dataphase* factors: "'(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.'" *Jet Midwest Int'l Co., Ltd v. Jet Midwest Grp.*, LLC, 953 F.3d 1041, 1044 (8th Cir. 2020) (quoting *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). "While no single factor is determinative, the probability of success factor is the most significant." *Prime Therapeutics LLC v. Beatty*, 354 F. Supp. 3d 957, 967 (D. Minn. 2018) (cleaned up). The movant bears the burden of showing that

these factors favor a preliminary injunction. *See, e.g.*, *id.* (quoting *CPI Card Grp., Inc. v. Dwyer*, 294 F. Supp. 3d 791, 807 (D. Minn. 2018)).

**B.    Analysis of *Dataphase* Factors**

**1.    Irreparable Harm**

For purposes of justifying a preliminary injunction, "'[i]rreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages.'" *Phyllis Schlafly Revocable Tr. v. Cori*, 924 F.3d 1004, 1009 (8th Cir. 2019) (quoting *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009)). "To succeed in demonstrating a threat of irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (cleaned up); *see also Carlson v. City of Duluth*, 958 F. Supp. 2d 1040, 1058 (D. Minn. 2013) ("Possible or speculative harm is not enough to justify a preliminary injunction.") (cleaned up). "The loss of First Amendment freedoms constitutes irreparable injury." *Powell v. Ryan*, 855 F.3d 899, 904 (8th Cir. 2017) (citing *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1101-02 (8th Cir. 2013)). "'[F]ailure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction.'" *Adam-Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir. 1996) (quoting *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987)); *see also Dataphase*, 640 F.2d at 114 n.9 ("[T]he absence of a finding of irreparable injury is alone sufficient ground for vacating the preliminary injunction.").

The Court has already concluded, in addressing the Defendants' Motion to Dismiss, that Biron has not alleged any actual injury because most of her allegations of harm are conclusory and nonspecific, and the sole specific allegation of harm (denial of her motion to amend in *Biron v. Sawyer*) in fact does not plausibly allege harm caused by Defendants' actions. (In itself, that harm would not warrant injunctive relief, as the harm has already occurred, but the denial also does not suggest a likelihood of prospective harm, as it was Biron's litigation strategy rather than Defendants' conduct that caused any harm.) With respect to future harm or ongoing damages, Biron's allegations and evidence do not demonstrate that any harm "is certain and great and of such imminence that there is a clear and present need for equitable relief." *Roudachevski*, 648 F.3d at 706.

Generally, whether it be typewriter access, ELL access in the housing unit, or weekly ELL updates, Biron has not identified in which of her cases and how she will suffer harm without those categories of requested relief. She has not identified any argument she wished to investigate or make that she was not able or will not be able to make in the absence of the specific relief requested in the Motion for Preliminary Injunction in this case or any other case in this District. In fact, all of her other cases in this District were dismissed before she filed her Motion for Preliminary Injunction. *See Biron v. Sawyer*, Dkt. 75 (D. Minn. Sept. 30, 2020); *Biron v. Hurwitz*, No. 19-cv-57 (SRN/LIB), Dkt. 68 (D. Minn. Feb. 19, 2020) (Judgment)[34]; *Biron v. Barnes*, No. 19-cv-

---

[34]     Biron filed a motion for relief from judgment in February 2021 in *Biron v. Hurwitz*, several months after the Motion for Preliminary Injunction in this case. No. 19-cv-57 (SRN/LIB), Dkt. 69 (D. Minn. Feb. 11, 2021). Biron references this motion in her Reply in support of the Motion for Preliminary Injunction but only makes the conclusory

898 (SRN/LIB), Dkt. 7 (D. Minn. June 10, 2019) (Judgment). To the extent other cases are ongoing, any harm alleged by Biron is generalized and speculative. (*See* Dkt. 60 at 1-2, 3 (referring to other litigation, including petitions for certiorari to the U.S. Supreme Court, but only generally stating that "Plaintiff will be irreparably harmed" and "her litigation will be negatively effected [sic]").) And to the extent that Biron cannot use the ELL and a typewriter frequently enough or for a long enough period of time, she is able to request extensions or other relief from this Court or any other. *See Biron v. Sawyer*, Dkt. 75 at 11 (Sept. 30, 2020) ("Had she sought additional time or a stay of proceedings due to limited access to the law library and typewriters, she was certainly able to seek such relief."). Indeed, when Biron requested an extension in *Biron v. Sawyer* to draft her objections to the Order and Report and Recommendation, the request was granted, *Biron v. Sawyer*, Dkt. 73 (Sept. 10, 2020), and in this case, when she requested more time to respond to the Motion to Dismiss, the request for more time was granted (Dkts. 66, 68). In both cases, even if she did not receive all the time she requested, Biron ultimately submitted timely, legible, and competent arguments that were considered by the Court.

Specifically with respect to access to a typewriter, Biron argues, "The quality of Plaintiff's legal filings suffers because handwriting lengthy documents is arduous and extremely time consuming," and, "The time devoted to hand drafting means less time for legal research and analysis," which results in irreparable harm "if it causes an adverse court ruling." (Dkt. 24 at 5; *see also* Dkt. 60 at 3 (arguing that "her litigation will be

---

argument that "[w]ithout this expedited relief, Plaintiff will be irreparably harmed. (Dkt. 60 at 1-2.) That conclusory assertion does not show a threat of irreparable harm.

negatively effected [sic]").)  But as Judge Nelson found in *Biron v. Sawyer*, "[Biron's]

handwritten filings are very legible, well-organized, and cite appropriate legal authority."

Dkt. 75 at 11 (Sept. 30, 2020).  There is no evidence, nor more than conclusory

statements, that Biron will suffer harm as a result of not having access to a typewriter.[35]

Further, her last two submissions were typewritten (Dkts. 73-74), which likely would

moot any request for injunctive relief as to this point.  As to the frequency of case law

updates in the ELL, Biron has similarly only made the conclusory allegation that

quarterly updates "prejudice[e] Plaintiff's ability to litigate her [cases]."  (Dkt. 5 ¶ 30.)

She has not identified any instance where the update schedule has affected any litigation.

Finally, Biron makes no argument about why it is certain that she will suffer harm if the

ELL is not available from her housing unit as opposed to another location (e.g., the

Recreation Building).[36]  (*See* Dkt. 24.)

    In sum, Biron's claims of irreparable harm are merely speculatory and conclusory

and do not show that harm is likely in the absence of an injunction.  *See Orbit Sports LLC*

*v. Taylor*, No. 21-CV-1289 (ECT/TNL), 2021 WL 2719605, at *13 (D. Minn. July 1,

2021) ("The harm must be *likely* in the absence of an injunction, great, and of such

---

[35]    Biron's arguments also refer to the difficulty of drafting lengthy documents by
hand, pain in her hand, and a diagnosis of tendonitis caused by handwriting her legal
filings.  (*E.g.*, Dkt. 25 ¶ 11; Dkt. 32; Dkt. 60 at 3.)  She has not substantiated her claim of
tendonitis, however, and the Court find that these assertions do not constitute a threat of
irreparable harm.

[36]    The Court notes that Biron's requested relief has changed from "reasonable and
meaningful access to a law library" (Dkt. 5 ¶ 54) to the specific relief of access to the
ELL from her housing unit (Dkt. 24).  The Court is not aware of any case holding that the
First Amendment requires that an inmate be able to access a law library from her housing
unit.

imminence that there is a clear and present need for equitable relief.  A plaintiff must show more than a future risk of irreparable harm . . . .") (cleaned up).

### 2.   Probability of Success

"'Success on the merits has been referred to as the most important of the four [*Dataphase*] factors.'"  *Jet Midwest Int'l*, 953 F.3d at 1044 (quoting *Roudachevski*, 648 F.3d at 706).  When considering the likelihood of success on the merits, a movant need only show a "fair chance of prevailing."  *Id.* at 1045 (cleaned up).  Furthermore, the movant "need only establish a likelihood of succeeding on the merits of any one of [its] claims."  *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1040 (8th Cir. 2016) (cleaned up).

For the reasons discussed in detail above, the Court has recommended dismissal under Rule 12(b)(6) and, in the alternative, granting summary judgment against Biron. Accordingly, Biron is not likely to prevail on the merits of her claims and this factor weighs against Biron's request for preliminary injunctive relief.[37]

### 3.   Balance of Harms and Public Interest

The balance-of-harms factor and the public-interest factor are separate *Dataphase* factors.  The Eighth Circuit has indicated, however, that when public governmental entities are the potential target of an injunction, the two factors "to some extent . . . are

---

[37]   Biron argues that Defendants have waived or forfeited any argument as to this factor.  (Dkt. 60 at 2.)  However, Defendants responded to the Motion for Preliminary Injunction jointly with their brief in support of the Motion to Dismiss, so their position on the merits has been argued.  (*See* Dkt. 55.)  Moreover, it is Biron's burden to establish that a preliminary injunction should issue, and so, regardless of what arguments Defendants did or did not make, the Court must assess whether Biron has proved the *Dataphase* factors.  *See Prime Therapeutics*, 354 F. Supp. 3d at 967.

connected." *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 372 (8th Cir. 1991); *see also Adventist Health Sys./Sunbelt, Inc. v. United States Dep't of Health & Hum. Servs.*, No. 320CV00101SMRSBJ, 2021 WL 973455, at *19 (S.D. Iowa Mar. 12, 2021) (quoting *Glenwood Bridge*). The Court will therefore consider these two factors together.

With respect to the balancing of the harms, courts in this District indicate that analyzing this factor "involves assessing the harm the movant would suffer absent an injunction, as well as the harm other interested parties would experience if the injunction issued." *Pavek v. Simon*, 467 F. Supp. 3d 718, 761 (D. Minn. 2020) (citing *Mainstream Fashions Franchising, Inc. v. All These Things, LLC*, 453 F. Supp. 3d 1167, 1203-04, (D. Minn. 2020)). This assessment requires the Court to "flexibly weigh the case's particular circumstances to determine whether justice requires the court to intervene to preserve the status quo." *Id.* (cleaned up)).

As for the public-interest factor, courts should be very wary of imposing injunctive relief in the prison context. *See, e.g.*, *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)) ("[I]n the prison context, a request for injunctive relief must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'"); *O'Malley v. Birkholz*, No. 20-CV-0660 (ECT/TNL), 2020 WL 3064722, at *1 (D. Minn. May 13, 2020) (quoting *Goff*), *R.&R. adopted*, 2020 WL 3062183 (D. Minn. June 9, 2020). The "courts should not get involved unless either a constitutional violation has already occurred or the threat of such

a violation is both real and immediate." *Goff*, 60 F.3d at 521 (quoting *Rogers*, 676 F.2d at 1214) (quoted by *O'Malley*, 2020 WL 3064722, at *1).

Biron argues that she "cannot imagine any injury to the Defendants that providing a typewriter & ELL access would incur," "Defendant Hiller's claim that providing a typewriter could spread COVID-19 is absolutely absurd," and "the public interest is served when courts force government entities to comply with the law and with their own regulations." (Dkt. 24 at 5.)

With respect to harm to Biron, the Court has already concluded that it is not at all certain that Biron will suffer harm absent an injunction and that no constitutional violation has already occurred. With respect to harm to Defendants, granting the specific relief that Biron seeks—to require the ELL to be updated on a particular schedule, to require the ELL to be available in the housing unit, and to permit Biron to use the ELL and typewriters as much as she wanted—would significantly disrupt the BOP's operations in the particularly sensitive area of prison management, and while the BOP must still consider COVID-19 risks in its operations.[38] These two factors favor denying the Motion for Preliminary Injunction.

---

[38] Biron argues that "Defendants' attempt to satisfactorily explain why a typewriter has not been provided on the housing unit, and why the ELL was not activated on the housing unit until September 14, 2020 . . . fly in the face of the facts and defy common sense." (Dkt. 60 at 4; *see id.* at 4-8 (discussing details of ELL, typewriter, and TRULINCS terminals use).) In the context of the Motion for Preliminary Injunction, Biron has not met her burden to demonstrate that an injunction should issue. Further, on this record, the Court declines to second-guess decisions made by the BOP to try to minimize the spread of COVID-19 during an unprecedented pandemic.

**C.   Conclusion on the Motion for Preliminary Injunction**

In sum, the Court finds that all four *Dataphase* factors weigh against granting

Biron's Motion for Preliminary Injunction.  Accordingly, the Court recommends denying

the Motion for Preliminary Injunction.[39]

## IV.   UNITED STATES' MOTION TO SCREEN AND STAY PROCEEDINGS (DKT. 7)

In this motion, Defendants request that the Court screen Biron's Amended

Complaint pursuant to 28 U.S.C. § 1915A and stay all proceedings pending the

screening.  (Dkt. 7.)  In their brief in support of the Motion to Screen and Stay,

Defendants further request that the Court issue an order requiring Biron to pay a filing fee

or, in the alternative, submit an application to proceed IFP.  (Dkt. 8 at 1-2.)  The Court

addresses each of these requests below.

**A.   Legal Standard for Screening under the PLRA**

The PLRA "contains provisions that should discourage prisoners from filing

claims that are unlikely to succeed."  *Crawford-El v. Britton*, 523 U.S. 574, 596 (1998).

Among other things, the PLRA "requires all inmates to pay filing fees," "denies in forma

pauperis status to prisoners with three or more prior 'strikes,'" and "directs district courts

to screen prisoners' complaints before docketing and authorizes the court on its own

motion to dismiss 'frivolous,' 'malicious,' or meritless actions."  *Id.* (citations omitted).

Specifically, under 28 U.S.C. § 1915A(a), "[t]he court shall review, before docketing, if

feasible or, in any event, as soon as practicable after docketing, a complaint in a civil

---

[39]   Having carefully reviewed the record, the Court concludes that no hearing on the Motion for Preliminary Injunction is necessary.  *See* D. Minn. LR 7.1(c)(5).

action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." In this review, "the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b). Similarly, § 1915(e)(2)(B) provides for dismissal "at any time" of pleadings where a litigant has applied for IFP status. *See Opiacha v. Dep't of Hum. Servs.*, No. 20-CV-1032 (NEB/DTS), 2020 WL 4813361, at *1 n.2 (D. Minn. Aug. 19, 2020) (noting similarity of § 1915(e)(2) and § 1915A).

**B.    Screening Under 28 U.S.C. § 1915A**

With respect to screening Biron's Amended Complaint pursuant to 28 U.S.C. § 1915A, Defendants argue that the Court should do so because Biron has, by serving unfiled state court lawsuits, "avoid[ed ] the PLRA screening process" (Dkt. 8 at 6) and has done so intentionally, in this case and others (*id.* at 1, 2-3, 6). The Court ordered Defendants to file a reply memorandum "explaining its position on . . . whether this Court may screen this action immediately pursuant to 28 U.S.C. § 1915A, regardless of whether 28 U.S.C. § 1915(e)(2) applies." (Dkt. 29 at 4-5.) In the reply memorandum, Defendants argue, "Biron's Amended Complaint should be subject to screening under the PLRA because it is malicious, as evidenced by her email stating her intent to circumvent the PLRA, and it is frivolous," and "Though there is no mandatory Eighth Circuit authority requiring the Court to order post-removal screening of Biron's Amended Complaint under the PLRA, it is appropriate to do so based on the PLRA and applicable case law."

(Dkt. 34 at 1.)  Defendants reiterate their position that Biron is purposefully circumventing the PLRA.  (*Id.* at 2.)  They argue that the case having been removed from state court "does not foreclose this Court from screening the Amended Complaint under the PLRA" and note, "At least one district court has recently screened a *Bivens* case under the PLRA after removal."  (*Id.* at 3 (citing *Isom v. United States*, 19-cv-50213 (N.D. Ill. Sept. 23, 2019)).)  Defendants further argue that "the Amended Complaint falls under the PLRA, 28 U.S.C. § 1915(b), and Biron must pay a civil filing fee for the case to proceed or apply for and receive IFP status."  (*Id.* at 4.)  Biron argues in response, "'It is not the practice of this Court, however, to screen complaints brought by prisoners pursuant to 28 U.S.C. § 1915A when the complaint is removed from state court by a defendant.'"  (Dkt. 19 at 1 (quoting *Biron v. Hurwitz*, No. 19-cv-57 (SRN/LIB), Dkt. 10 at 2 (D. Minn. Jan. 31, 2019)).)

As an initial matter, the Court agrees with Defendants that cases removed from state court are subject to screening under § 1915A.  Indeed, courts in this District have done so.  *See Schlegel v. Schoeneck*, No. CV 16-0867 (DWF/BRT), 2016 WL 7757268, at *1 (D. Minn. Nov. 29, 2016) (reviewing removed case under § 1915A(b) and citing cases doing same), *R.&R. adopted*, 2017 WL 150506 (D. Minn. Jan. 13, 2017); *Iverson v. Dep't of Corr.*, No. CIV. 07-4710DSDRLE, 2008 WL 205281, at *2 n.1 (D. Minn. Jan. 24, 2008) (where plaintiff had been permitted to proceed IFP, concluding that "District Courts are required to screen all suits by prisoners, whether or not they seek to proceed in forma pauperis, and pursuant to Section 1915A(b)(1)-(2), this screening must take place,

even if the prisoner has already paid the filing fee, or been granted leave to proceed IFP")
(cleaned up).

However, although the Amended Complaint may have been subject to summary
dismissal under 1915A, the Court found it more appropriate to address the merits after
fulsome briefing by the parties. *See Sellors v. Obama*, No. 13-CV-2484 SRN/JSM, 2014
WL 1607747, at *10 n.15 (D. Minn. Apr. 15, 2014) ("Although the Complaint and
Amended Complaint are arguably subject to summary dismissal as frivolous pursuant to
28 U.S.C. § 1915A(b), this Court instead addressed the merits of defendants' motions to
dismiss."). This permitted the Court to consider arguments under Rule 12(b)(6) and Rule
56. Further, the fact that a case is not dismissed on pre-screening does not preclude
dismissal under Rule 12(b)(6). *See Braun v. Hanson*, No. 18-CV-3355 (JNE/ECW),
2020 WL 1496580, at *2 (D. Minn. Jan. 27, 2020) (rejecting plaintiff's argument that the
screening requirements of § 1915A bar defendants from bringing a motion to dismiss,
addressing arguments raised in and disposition of the motion to dismiss), *R.&R. adopted*,
2020 WL 1493884 (D. Minn. Mar. 27, 2020). Given the current posture of this case,
Defendants' request for a stay is moot and, in any event, would no longer be warranted.
The Court accordingly denies as moot Defendants' Motion to Screen and Stay insofar as
it sought screening under § 1915A and staying pending screening.

## C.    Ordering Biron to Pay a Filing Fee or Apply for IFP Status

Although not contained in the Motion itself (*see* Dkt. 7), Defendants request in
their briefs that the Court require Biron her to pay a filing fee or, in the alternative, to
submit an IFP application. (Dkt. 8 at 1-2, 6; Dkt. 34 at 4.) Defendants contend that

Biron is purposefully circumventing the PLRA by initiating her cases in state court, knowing that the defendants are likely to remove them to Federal court.  (Dkt. 8 at 1-2, 6; Dkt. 34 at 2, 9.)  The Court ordered Defendants to file a reply memorandum "explaining its position on (1) what legal authority this Court has to 'require[e] [Plaintiff] to pay [this action's] filing fee under the [Prison Litigation Reform Act], or, in the alternative, submit an application seeking leave to proceed in forma pauperis,' given that Defendants removed this action to this Court."  (Dkt. 29 at 4 (citations omitted).)  The Court noted that the case law Defendants cited in their opening brief "does not appear [to] directly address whether a federal district court can impose filing fees (or an IFP-application requirement) when state court defendants remove a state court action to federal court." (*Id.* n.4.)

Defendants have not adequately explained what legal authority would allow this Court to require Biron to pay a filing fee, or file an IFP application, when she commenced the action in state court and it was Defendants who removed the action to Federal court.  *See* 28 U.S.C. § 1914 ("The clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court, whether by original process, removal or otherwise, to pay a filing fee of $350, except that on application for a writ of habeas corpus the filing fee shall be $5.").  Defendants argue: "There can be no question that Ms. Biron, a federal inmate, has asserted civil claims against federal officials in their official and individual capacities.  As such, the Amended Complaint falls under the PLRA, 28 U.S.C. § 1915(b), and Ms. Biron must pay a civil filing fee for the case to proceed or apply for and receive IFP status."  (Dkt. 34 at 4 (citations omitted).)

The PLRA does not state that federal prisoners who file civil claims against federal officials **in state court** must pay a filing fee or apply for IFP status, nor does it require payment of a filing fee if the case is removed to Federal court.  Defendants seem to argue that because both § 1915A, which provides for screening of prisoner complaints, and § 1915, which permits a prisoner to proceed without prepaying fees—but still requires a prisoner to pay the full amount of the filing fee over time—are part of the PLRA, and the PLRA has certain policy goals, therefore the requirements of the IFP proceedings somehow bleed into those of the former.  (*See* Dkt. 8 at 5-6 (arguing that "[b]ecause Biron is a prisoner, her claims are subject to the PLRA," discussing the purpose of the PLRA, and concluding that "requiring her to pay the filing fee, or, in the alternative requiring her to submit an IFP application is justified based on . . . the plain language and intent behind the PLRA"); Dkt. 34 at 4 ("[Because Biron, a federal inmate, has asserted civil claims against federal officials in their official and individual capacities], the Amended Complaint falls under the PLRA, 28 U.S.C. § 1915(b), and Ms. Biron must pay a civil filing fee for the case to proceed or apply for and receive IFP status.").)

But Defendants offer no authority for importing one statutory section's provisions into another, and the Court sees no basis for such an interpretation in the statutes.[40] Defendants also argue that Biron is filing her lawsuits in state court with the express intent of "'bypass[ing] the PLRA restrictions and the filing fees'" and therefore should be

---

[40]   Although Defendants argue that "[t]he three cases cited in the United States' initial brief are applicable to the facts here" (Dkt. 34 at 10-11 (discussing cases)), the Court is unpersuaded.  None involve a case that was removed from state court.

required to apply to proceed IFP or pay a filing fee.  (Dkt. 8 at 6 (citation omitted); *see also* Dkt. 34 at 5, 10 ("Allowing Ms. Biron to utilize the state court system in order to bypass the PLRA and bring abusive law suits in effect creates an unacceptable loophole in the statute.  Ms. Biron's own admission points to the fact that her intention is to do just that.").  Defendants claim they "are merely asking this Court to apply the PLRA's fee and screening provisions as a response to Biron's inappropriate conduct.  Defendants are not asking the Court to do more than it would have done had Biron initiated the litigation in federal court."  (Dkt. 34 at 10.)  Regardless of the appropriateness of Biron's conduct, the Court finds no support in the PLRA or case law that authorizes application of the IFP application and filing fee requirement of § 1915 to state-court matters removed to Federal court.

Defendants also rely on the Court's inherent authority for the proposition that this Court can impose a filing fee on Biron or order her to apply for IFP status is the Court's inherent authority.  (Dkt. 34 at 9 ("Outside of the authority created in § 1915, this Court possesses inherent powers to manage its docket 'so as to achieve the orderly and expeditious disposition of cases.'") (citation omitted).)  Other than the general proposition that this Court possesses inherent powers to manage its docket, Defendants offer no more in support of this argument beyond pointing to Biron's "inappropriate conduct" and "malicious" tactics.  (*See id.*)  Imposing a filing fee not authorized by statute or rule sounds more like a sanction than an exercise of inherent authority, and the Court declines to require payment of the filing fee based on the current record.  However, Biron is now aware that the state courts will reject on jurisdictional and venue grounds

her lawsuits asserting constitutional claims against Federal officials. (Dkt. 21 ¶¶ 10, 15-16, 19-20 (citing Dkt. 20-1, Ex. B (Waseca County Court Administrator letter for *Biron v. Hurwitz*); Dkt. 20-2, Ex. C (Waseca County Court Administrator letter for *Biron v. Sawyer*); and Dkt. 20-3, Ex. D (Waseca County Court Administrator letter for the present case)).) Should she continue to engage in such tactics, it is possible that a court could, under certain circumstances, find her conduct warranted sanctions if asked to decide a properly supported motion. The Court also declines to require Biron to file an IFP application pursuant to its inherent authority, as there appears to be no point in doing so.

Accordingly, the Court denies the Motion to Screen and Stay to the extent Defendants request, via their briefs, an order requiring Biron to pay a filing fee or apply to proceed IFP.

## V.    ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.    The United States' Motion to Screen and Stay Proceedings (Dkt. 7) is **DENIED AS MOOT** to the extent it requests that the Court screen the Amended Complaint pursuant to 28 U.S.C. § 1915A and stay case deadlines and **DENIED** to the extent it requests that Plaintiff be ordered to pay a filing fee, or, in the alternative, submit an application to proceed in forma pauperis.

2.    Plaintiff Lisa A. Biron's Motion for Leave to Supplement Motion for Preliminary Injunction (Dkt. 31) is **GRANTED**.

3.    Plaintiff Lisa A. Biron's Motion for Leave to File Sur-Reply (Dkt. 41) is **GRANTED**.

## VI.    <u>RECOMMENDATION</u>

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT**:

1.    Plaintiff Lisa A. Biron's Request for Expedited Preliminary Injunctive Relief (Dkt. 22) be **DENIED.**

2.    Defendants Michael Carvajal, Director Federal Bureau of Prisons; FCI Waseca Warden Mistelle Starr; and Deanna Hiller, FCI Waseca Unit Manager's Motion to Dismiss or for Summary Judgment (Dkt. 52) be **GRANTED** and that Plaintiff's Amended Complaint be **DISMISSED WITHOUT PREJUDICE**.


DATED: July 20, 2021                     <u>s/Elizabeth Cowan Wright</u>
                                         ELIZABETH COWAN WRIGHT
                                         United States Magistrate Judge


### <u>NOTICE</u>

**Filings Objections:** This Report and Recommendation is not an order or judgement of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).